EPPA HUNTON, IV, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107669.   Promulgated March 23, 1943.

*George D. Gibson, Esq.*, for the petitioner.
*E. L. Corbin, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge:* The respondent determined a deficiency of $714.55 in the petitioner's income tax for 1939.  The only issue presented is whether the petitioner is entitled to deduct as a charitable contribution the premium of $639.50 paid by him during the taxable year on a certain insurance policy on his life.

The proceeding was submitted on a stipulation of facts with certain accompanying documents.  The facts are found as stipulated and shown by the documents.

The petitioner is an individual residing at Richmond, Virginia, and filed his income tax return for 1934 with the collector of internal revenue for the district of Virginia.

On October 31, 1938, the petitioner entered into an agreement with the First & Merchants National Bank of Richmond and Homassel Mayre Hunton, petitioner's wife, as trustees.  The agreement provided that the trustees should hold an insurance policy on petitioner's life for $25,000, which he took out a few days afterwards and delivered to the trustees, and any other policies of insurance that he might deliver under the terms of the agreement.  It was further provided that the "Trustor shall pay all premiums, assessments and other charges required to continue the policies in force but neither the Trustor nor the Trustees shall be under any duty or obligation to pay any of these charges."  In event of the failure of the petitioner, or of anyone for him, to make payment of premiums or other charges

to continue the policies in force, the trustees were given the power in their discretion to exercise any of the options, rights, or privileges contained in any of the policies held under the agreement. The agreement further provided that upon collecting the proceeds of any of said policies the trustees should hold such proceeds in a trust fund which they should manage, invest and reinvest in their absolute discretion and, after making payment of all expenses and maintaining the principal of the fund at an amount equal to the net proceeds collected from the policies, should expend the net income therefrom as follows:

* * * for the relief of the poor, the sick and the suffering in the City of Richmond, either directly by said Trustees or through any corporation or trust or community fund or foundation organized and operated exclusively for charitable or educational purposes as they may deem best. * * *

The agreement also provided that the petitioner's wife "shall have the exclusive right to designate the recipients of the income from the trust hereby established so long as she shall live."

The peitioner reserved no right to alter, amend, or revoke the trust agreement. Neither did the petitioner reserve the right to change the beneficiaries of the policy dated November 10, 1938, in which the trustees were named beneficiaries in the following terms:

First and Merchants National Bank of Richmond, Richmond, Virginia, and Homassel Mayre Hunton, as trustees, or their successors in trust, in accordance with trust agreement dated October 31, 1938, and any amendments or supplements thereto, without liability on the part of the Insurance Company to see to the carrying out of the terms of the trust. All rights, privileges, benefits, options and elections granted to or conferred upon the insured by the policy are hereby vested solely in the said trustees, or their successors in trust, in accordance with said trust agreement, and any amendments or supplements thereto, it being intended that the insured shall have no legal incidents of ownership in the policy.

In determining the deficiency in controversy the respondent refused to allow as a deduction for a charitable contribution the annual premium of $639.50 paid in 1939 on the policy dated November 10, 1938.

The petitioner contends that by means of the trust agreement and the insurance policy he established, in 1938, a trust exclusively for charitable purposes and that the premium paid on the policy in 1939 constituted an allowable deduction under section 23 (o) (2) of the Revenue Act of 1938.

Pointing out that the trust did not actually expend any funds during the taxable year for charitable purposes and had not done so up to the time of the hearing, the respondent contends that the trust was not "organized and operated" for such purposes within the meaning of the statute. It may be regarded as settled that life insurance policies may be the subject of gift and that where the bene-

ficiary or assignee has been irrevocably named the continued payment of premiums on the policies by the insured constitutes additional gifts to the beneficiary or assignee. *Ernst R. Behrend*, 23 B. T. A. 1037; acquiescence, C. B. X-2, p. 5. By making the trust agreement and taking out the insurance policy we think the petitioner set up a valid trust and made a gift thereto. There is nothing to indicate that the trust had any income from any source during 1938 or the taxable year 1939 or that during either of those years it had any asset other than the insurance policy. The policy had no cash surrender value prior to the expiration of two years from its date, November 8, 1938, and the face of the policy was not payable prior to the death of the petitioner. Clearly under these circumstances the trust had nothing to distribute during the taxable year and will have nothing to distribute prior to the death of the petitioner unless in the meantime the policy is surrendered for cash. Until the happening of one of these contingencies the trust will be in the process of accumulating or acquiring property for use in fulfilling the purpose for which it was created. In that respect the situation here is not unlike that in *William T. Bruckner et al., Trustees*, 20 B. T. A. 419, where the trustees were not dispensing charity but were preparing to do so through the construction of an old peoples home which they were arranging to have constructed. In that case it was recognized that there might be a substantial interval between the creation of a trust and the actual dispensing of charity by it. It was there said:

* * * The qualifying words "organized and operated", were, we think, meant to require that its [the trust's] operations at all stages should carry out its exclusively charitable purpose, that both the organization and its operations should be harmoniously in accord with such purpose, and that a corporation is not within the category merely because it is so organized if in fact its operations are other than charitable. The charitable destination of its income is the test rather than the immediate manner of its receipt. *Trinidad* v. *Sagrada Orden De Predicadores*, 263 U. S. 578; *Unity School of Christianity*, 4 B. T. A. 61. Its conservation during a wise consideration of how best to fulfill the charitable purpose is not at variance with the clear legislative purpose of the deduction, and the statute should not be so narrowly read as to exclude situations so plainly within its beneficent intendment.

We accordingly conclude that there is nothing in the instant circumstances to warrant the conclusion that the trust involved herein was not "organized and operated exclusively for * * * charitable * * * purposes * * *." Sec. 23 (o) (2), *supra*. Cf. *A. W. Mellon*, 36 B. T. A. 977, 1064–1066.

Despite the provision of the trust agreement that the net income of the trust is to be "expended for the relief of the poor, the sick and the suffering in the City of Richmond," the respondent contends that the trust was not charitable in character. This contention is grounded

on the provision that during her life the petitioner's wife shall have the exclusive right to designate the recipients of the income from the trust. In substance, the respondent urges that this caused the trust to be one for private charity and was tantamount to making the trust a mere conduit for gifts to such selected individuals as the petitioner's wife might designate. Where a trust is established for the benefit of the donor's blood relations it is not a charitable trust. *James Sprunt Benevolent Trust*, 20 B. T. A. 19. A trust established by a donor and used by him to make contributions to his relatives is operated for the personal or private purposes of the donor and not as a charitable trust. *Henry C. DuBois*, 31 B. T. A. 239. A fund collected for the exclusive use of one needy person is not a charitable fund but only a vehicle for the bestowal of private bounties. *Cap Andrew Tilles*, 38 B. T. A. 545. The trust here is not one for the benefit of the petitioner's blood relations, is not for the exclusive use of one person, and is not being used by the petitioner to make contributions to his relatives. The instant trust is indefinite as to specific beneficiaries and a broad class of persons has been designated as being entitled to its benefits. Such features are characteristic of a public trust as distinguished from a private use. Obviously, however, someone must select those who shall benefit. The fact that the petitioner has named his wife to do the selecting during her lifetime does not of itself obviate the charitable character of the trust. We accordingly hold that the instant trust was organized and operated as a charitable trust during the taxable year and that the petitioner is entitled to deduct as a charitable contribution the amount of the insurance premium involved herein. Cf. *H. H. Bowman*, 16 B. T. A. 1157; *Ernst R. Behrend, supra*.

The parties have stipulated that should we hold for the petitioner on the issue presented, the deficiency is $567.47. Accordingly

> *Decision will be entered that there is a deficiency in income tax of $567.47 for 1939.*