JOHN DANZ, PETITIONER, ET AL.,* *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26402–26408, 33429.   Promulgated June 4, 1952.

*F. A. LeSourd, Esq.,* for the petitioners.

*Wilford H. Payne, Esq.,* and *Douglas L. Barnes, Esq.,* for the respondent.

*Proceedings of the following petitioners are consolidated herewith: Jessie Danz, Docket No. 26403; William Frank Danz, Docket No. 26405; Selma Jane Danz, Docket No. 26406; Fredric Danz, Docket No. 26407; Selma Danz, Docket No. 26408; John Danz Charitable Trust, Docket Nos. 26404 and 33429.

458

460

OPINION.

MURDOCK, *Judge:* One of the requirements for exemption under section 101 (6) is that the entity be "organized and operated exclusively

for religious, charitable, scientific, literary, or educational purposes." Among the purposes of the present trust during the taxable years was that of making money from the operation of retail candy stores and a hotel. Those were regular substantial businesses which normally subject the owners to tax.[1] They accounted for the larger part of the income of the trust and were in no sense merely incidental or even related to the operation of a charity. Cf. *Squire* v. *Students Book Corp.*, 191 F. 2d 1018. This trust did not operate any charity but was a "feeder" in that its property must ultimately go to a charitable organization. It was organized to do and the deed of trust authorized it to do the sort of thing which it actually did in operating these two profitable businesses. This Court has held that where a corporation was organized and operated to carry on a regular business under circumstances similar to those here present, it is not exempt by section 101 (6) because it was not organized and operated "exclusively" for the purposes mentioned in that provision. The subject has been fully discussed both by this Court and by the Court of Appeals for the Fourth Circuit. The Tax Court has also indicated that it had not changed its thinking on this point despite a reversal by the Court of Appeals for the Third Circuit which chose to follow *Roche's Beach, Inc.* v. *Commissioner*, 96 F. 2d 776. Cf. *C. F. Mueller Co.*, 14 T. C. 922, revd. 190 F. 2d 120; *Joseph B. Eastman Corporation*, 16 T. C. 1502; *Donor Realty Corporation*, 17 T. C. 899; *United States* v. *Community Services, Inc.*, 189 F. 2d 421. The present case is not distinguishable in principle from those cases because the trust did not take over an existing business, *Donor Realty Corporation, supra*, or because it did not intend to operate the hotel any longer than might prove to be necessary to find a suitable lessee. The trust is not exempt from tax under section 101 (6).

The Commissioner devotes a considerable portion of his brief to a vain effort to support his contention that the income of the trust for the years 1943, 1944, and 1945 is taxable to the community of John and Jessie Danz under section 22 (a) and the principle of the line of cases headed by *Helvering* v. *Clifford*, 309 U. S. 331. The trouble with his argument is that it does not fit the facts in this case and he does not cite any case with facts similar to those here present. This trust was irrevocable and the grantors retained no powers to change it in any way. It was for an indefinite period and could extend beyond the lives of the grantors. The grantors as such retained no managerial powers over the trust property. There was no purpose

---

[1] Income from those businesses would not be exempt under the 1950 Amendments. See section 301, Revenue Act of 1950. Substantially all of the work of carrying on the candy shops was not performed without compensation. See section 422 (b) provided by that amendment. Section 302 (a) of the Revenue Act of 1950 does not apply because this was unrelated business income.

in the creation of the trust to benefit the grantors or members of their immediate family in any way, and the trust was not operated during the taxable years to benefit that group. The trust was to benefit charitable organizations. Cf. *Pierce* v. *United States*, 51 F. Supp. 126, affd. 137 F. 2d 428. The only power retained by John Danz as a grantor was the power to designate beneficiaries and to fix the time and amount of the contributions from the trust to them. The Commissioner indicated by a ruling in 1946 that he would not regard such a power as a reason to tax trust income to a grantor. T. D. 5488, sec. 29.22 (a)—21 (d) (2), 1946–1 C. B. pp. 19–21; Mim. 5968, 1946–1 C. B. 25. Cf. *Louis Stockstrom*, 3 T. C. 255, affd. 148 F. 2d 491, which is distinguishable on its facts. Contributions were made and they were made only to organizations which the Commissioner concedes were within sections 23 (o) and 101 (6). The situation disclosed by this record does not bring the case within the ambit of the *Clifford* precept or make the income of the trust taxable to the grantors under section 22 (a). Cf. *Pierce* v. *United States*, *supra; Commissioner* v. *Chamberlain*, 121 F. 2d 765; *Edward Mallinckrodt, Jr.*, 2 T. C. 1128, 1146, affd. 146 F. 2d 1, certiorari denied 324 U. S. 871.

Another contention of the Commissioner, inconsistent with that just discussed, is that the trust was an association taxable as a corporation. One of the leading cases on that subject is *Morrissey* v. *Commissioner*, 296 U. S. 344, but it is obvious from a study of that case and others in the same field that they do not apply to an ordinary trust like this one. See Regs. 111, sec. 29.3797–3. The following quotation from the *Morrissey* case bears this out:

> It is no answer to say that these advantages flow from the very nature of trusts. For the question has arisen because of the use and adaptation of the trust mechanism. The suggestion ignores the postulate that we are considering those trusts which have the distinctive feature of being created to enable the participants to carry on a business and divide the gains which accrue from their common undertaking, trusts that thus satisfy the primary conception of association and have the attributes to which we have referred, distinguishing them from partnerships. In such a case, we think that these attributes make the trust sufficiently analogous to corporate organization to justify the conclusion that Congress intended that the income of the enterprise should be taxed in the same manner as that of corporations.

The John Danz Charitable Trust was not created to enable the participants to carry on a business and divide the gains which might accrue from their undertaking. The persons who created it were not participants in a common undertaking of carrying on the business of the trust. They did not divide the gains which accrued from the business of the trust. This was an ordinary trust and it did not have attributes making it sufficiently analogous to a corporation to justify the conclusion that Congress intended to tax its income in the same

manner as that of corporations. The Commissioner cites no case holding that a trust like this one, which was organized to aid charities rather than it grantors, was an association taxable as a corporation and he erred in making such a holding in this case.

This trust was a genuine valid trust. *In re Stewart's Estate*, 26 Wash. 32, 66 Pac. 148; *Peth* v. *Spear*, 63 Wash. 291, 115 Pac. 164; *In re Planck's Estate*, 150 Wash. 301, 272 Pac. 972; *In re Hunter's Estate*, 147 Wash. 216, 265 Pac. 466. Cf. *William H. Donner*, 40 B. T. A. 80; *A. W. Mellon*, 36 B. T. A. 977, 1064 et seq; *Eppa Hunton IV*, 1 T. C. 821. It is taxable under Supplement E. This brings up the question whether it could have any taxable income since all of its gross income, not otherwise offset by deductions, is allegedly deductible under section 162 (a). That section provides that the net income of a trust shall be computed in the same manner as in the case of an individual except that "There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), * * *." This requires consideration of the terms of the deed of trust. *Commissioner* v. *Bonfils Trust*, 115 F. 2d 788, affirming 40 B. T. A. 1085; *Commissioner* v. *Upjohn's Estate*, 124 F. 2d 73. There was no requirement in the deed creating this trust that any part of the gross income of the trust should be paid or permanently set aside during any taxable year for the purposes and in the manner specified in section 23 (o). Cf. *Old Colony Trust Co.* v. *Commissioner*, 301 U. S. 379. All of the income of this trust for any year could be invested or put back into any business carried on by the trust unless John Danz, by a separate writing, directed otherwise. None of the income of the trust for 1943 was paid or permanently set aside, pursuant to any term of the deed creating the trust, for the purposes and in the manner specified in section 23 (o). An annual deduction is not allowed by section 162 (a) merely because the property of the trust must eventually go to charities. It was not until October 5, 1944, that any amount was paid by the trust to a charity for the purposes and in the manner specified in section 23 (o). The total charitable contributions actually made thereafter during 1944 amounted to $3,846.25. The contributions made in the later taxable years were $2,806.29 for 1945, $15,360 for 1946, and $43,625 for 1947. The record does not show that any other amounts were ever paid or permanently set aside for the purposes and in the manner specified in section 23 (o) but it shows that large portions of the gross income for the taxable years were used for other purposes such as to repay

loans, to pay interest on loans, and to make new investments. The income of a particular year used for such purposes might never go to any charity. Thus, the trust has not shown that it is entitled to deduct all of its otherwise taxable net income under section 162 (a), despite the fact that the ultimate distribution of its properties must be for purposes and in the manner specified in section 23 (o). Not only does the petitioner fail to qualify under the plain wording of section 162 (a) but it also seems unlikely that Congress intended to grant a deduction from current income where the income could be put to uses of the trust in its effort to create more income or profits for charities and might never reach any charity as income or principal, for example, it might be lost in the business venture.

The Commissioner erred in disallowing the amounts paid by the trust as Christmas bonuses to employees for 1943, 1944, 1945, and 1946. Those represented amounts ranging from $5 to $35 determined by the manager of the hotel to be suitable bonuses for various employees of the hotel, and a bonus to the manager ranging from $50 to $150 per year fixed by the real estate company as agent for the trust in the operation of the hotel. The determination of the Commissioner indicates that they were disallowed not because in excess of reasonable compensation for the employees but because the trust had not deducted withholding or social security taxes from the amounts paid, except in the year 1947 which is not in controversy. A deduction for the payment of $125 to the manager in 1945 was allowed by the Commissioner. He erred in not allowing deductions of all of the amounts claimed.

The holding that the trust was not organized and operated exclusively for charitable purposes under issue (1) also has a bearing upon issue (3) in which the individual petitioners claim that they are entitled to deductions under section 23 (o) (2) for contributions made to the trust. Those contributions are not deductible on the ground that they were made to the trust, a fund organized and operated exclusively for charitable purposes. However, contributions are deductible if they are made "for the use of" a corporation of the kind described in section 23 (o) (2). It has been held, properly, that the words "for the use of" used in section 23 (o) are intended to convey a meaning similar to that of "in trust for" so that a contribution irrevocably in trust for organizations described in section 23 (o) (2) is sufficient. *H. H. Bowman*, 16 B. T. A. 1157; I. T. 3707, 1945 C. B. 114. The trust to which the contribution is made does not need to be an organization of the kind described in sections 101 (6) or 23 (o) (2). The contributions here in question were made to a valid irrevocable trust for the use of charities of the kind described in section 23 (o) and are deductible under the Bureau's own ruling as well as under the law.

The trust contends that Forms 990 which it filed on September 19, 1946, for the calendar years 1943, 1944, and 1945 started the running of the statutory period for assessment and collection of its taxes for those years so that the notice of deficiency mailed to it on October 14, 1949, more than three years later, was too late. The returns to which it refers are those required by section 54 (f) (added by section 117 (a) and (b) of the Revenue Act of 1943). Section 54 is entitled "Records and Special Returns." (f) provides that every organization, with exceptions not here material, exempt from taxation under section 101 shall file an annual return "stating specifically the items of gross income, receipts, and disbursements, and such other information for the purpose of carrying out the provisions of this chapter" as the Commissioner may prescribe by regulations. There is no suggestion in section 54 (f) that returns filed in supposed compliance therewith will start the running of a statute of limitations on the assessment and collection of any taxes. Cf. section 302 (b), Revenue Act of 1950. The stipulation includes copies of the returns filed. A comparison of those returns with the fiduciary returns for those same years filed on July 29, 1947, shows that they do not contain all of the data from which a tax could be computed and assessed. Cf. *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304. Furthermore, the information was not only not in the form required of taxpayers, but it was not given with such uniformity, completeness, and arrangement as to constitute an adequate return for the purpose of starting the running of the statute of limitations on assessment and collection of the taxes due. *Commissioner* v. *Lane-Wells Co.*, 321 U. S. 219, affirming 43 B. T. A. 463. Section 302 (b) of the Revenue Act of 1950 provides that the filing of the information return required by section 54 (f) for any taxable year beginning prior to January 1, 1951, by an organization which would be exempt under section 101 were it not carrying on a trade or business for profit shall be deemed the filing of a return sufficient to start the period of limitations upon assessment and collection. But it goes on to provide that it shall not apply to a taxable year for which a notice of deficiency was sent to the taxpayer prior to September 20, 1950. The Commissioner mailed the notice of deficiency for the years 1943, 1944, and 1945 to the trust on October 14, 1949. Thus, section 302 (b) does not apply in this case, but the wording of it indicates clearly that returns required by section 54 (f) for taxable years beginning prior to January 1, 1951, were not intended to start the running of the period of limitations provided in section 275 and it required an act of Congress to make them effective for that purpose under any circumstances. The Commissioner is not barred by the statute of limitations from assessing and collecting the taxes due from the trust for the years 1943, 1944, and 1945.

The Commissioner notified the trustees by a letter dated November 22, 1946, that the trust was not exempt from tax and that income tax returns for all years would be required. Reconsideration was requested and the Commissioner again wrote the trustees on July 3, 1947, that upon reconsideration of the matter the previous conclusion was affirmed and returns must be filed. Fiduciary returns on Form 1041 were filed for the trust on July 28, 1947, covering the years 1943, 1944, 1945, and 1946. The first similar return for 1947 was filed on May 6, 1948. The latter return was due on March 15, 1948. The Commissioner assessed a 10 per cent addition to the tax for 1947 under section 291 (a) which provides that in case of any failure to make and file a required return within the prescribed time there shall be added to the tax 5 per cent for each 30 days or fraction thereof during which the failure continues, not to exceed 25 per cent in the aggregate, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The petitioner has not shown that its failure to make and file a required return for 1947 within the prescribed time was due to reasonable cause and not to willful neglect. The Commissioner did not err in adding the 10 per cent to the income tax of the trust for 1947.

*Decisions will be entered under Rule 50.*