Peggy Lou Riker v. Commissioner. Freda H. Grassmee v. Commissioner.
Riker v. Commissioner
Docket Nos. 46978, 46979.
United States Tax Court
T.C. Memo 1955-225; 1955 Tax Ct. Memo LEXIS 113; 14 T.C.M. (CCH) 903; T.C.M. (RIA) 55225; August 11, 1955
*113 1. Held: Income derived from the operation of a restaurant by petitioner was her income and not that of the Church organization to which she contributed it. 2. Held: Part of amounts contributed to a Church organization by petitioners was not deductible as contributions to a religious organization, since the Church was not organized and operated exclusively for religious purposes within the meaning of section 23(o), Internal Revenue Code of 1939. 3. Held: Dependency exemption for petitioner's mother disallowed, since her support was received from the Church. Howard B. Crittenden, Jr., Esq., Central Tower, San Francisco, Calif., for the petitioners. T. M. Mather, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax against petitioner *114 Peggy Lou Riker in the amount of $1,584.03 for 1948, and deficiencies of $86.53 and $90 for 1948 and 1949, respectively, against petitioner Freda H. Grassmee. By amendment to respondent's answer in the case of Freda Grassmee, an increased deficiency was claimed because of respondent's disallowance of an exemption claimed with respect to her mother. The cases were consolidated for hearing and decision. The questions we have to determine are (a) whether income derived from the operation of a restaurant by petitioner Peggy Lou Riker was income taxable to her or to a religious organization of which she was a member; and if taxable to her (b) whether she is entitled to a deduction for the year 1948 for contributions to a religious organization under section 23(o), Internal Revenue Code of 1939. In the case of Freda H. Grassmee the questions are whether the contributions to the same religious organization for the years 1948 and 1949 are deductible, and whether she is entitled to a dependency exemption for her mother for those years. Findings of Fact The petitioners are individuals. During her fiscal year 1949 Peggy Lou Riker lived in San Bernardino, California. During 1948 and a *115 part of 1949 Freda Grassmee lived in Los Angeles; in August 1949 she moved to San Francisco. Both petitioners' returns for the years in question were filed with the collector of internal revenue for the first district of California at San Francisco. Christ's Church of the Golden Rule is a religious nonprofit California corporation (hereafter called the Church). The Church was organized in 1944. In 1945 the Church was adjudicated a bankrupt and during 1948 and 1949 was in bankruptcy. The Church adopted a constitution and canon laws in 1948. The religious beliefs of the Church are set forth in the constitution which declares a belief in a true God, in Jesus Christ, the scriptures and in salvation through repentance. The economy of the Church is declared to be based on economic equality and the property and earnings of its members in the words of the constitution "should be owned and managed by the Church for the benefit of all mankind in accordance with the rules and regulations of the ecclesiastical society of this Church, that God may be glorified and all mankind directly or indirectly benefited." The ecclesiastical affairs of the Church are in the hands of an organization *116 consisting of a senior elder, an advisory board of elders, and a college of pastors. The temporal affairs of the Church are in the hands of "temporal agencies" subject to the control of the ecclesiastical authorities. Such affairs are carried on through charters granted by the senior elder with the advice of the advisory board, to the "various congregations, projects and other temporal activities * * *." According to the canon laws of the Church, a charter could be granted, withheld or revoked upon whatever terms and conditions the Church Government designated. The canon laws of the Church provide, inter alia, that all temporal agencies are to hold "their property upon a private trust for the ecclesiastical organization," and "All transfers, conveyances and sales shall be presumed to be bona fide gifts to the Lord's work unless there be conditions or understandings or promises to the contrary in writing, duly approved in writing by the duly constituted ecclesiastical Church Government." In operation, activities of Church members are of two types. Some members devote all of their time to working in Church projects and studying to be ministers of the Church's teachings. These *117 are called student ministers, and they live in apostolic societies called "Student Minister Training Projects." One purpose of these projects, most of which were engaged in commercial activities, is to spread the teachings of the Church by having the public witness the application of these teachings in everyday life. Some projects were not engaged in commercial activities but simply operated residential facilities for Church members. Members living in both types of projects contributed their earnings to the Church. Other Church members lived at home and participated in Church activities. The Church operated a theological seminary. The principal temporal agency of the Church is The Elected Delegates Committee (hereafter called the Committee) which was formed in 1946. During 1948 and 1949 the Committee operated various student minister training projects. It also operated the Church treasury and carried on various commercial activities in competition with privately owned enterprises, including, among others, a restaurant, a laundry, a lumber yard, bulb gardens, farming, stock raising and a warehouse. These enterprises were operated for profit. Gross receipts from the operation of *118 these projects were sent to the Committee covered by a form stating that the transfer was an outright gift from the project manager and was to be used only for Church purposes. For 1948 and 1949 the Committee filed amended returns of income on Treasury Department form 990 as an organization exempt under section 101 of the Internal Revenue Code of 1939, and also amended returns as an apostolic society on the partnership form 1065. The returns showed the Committee's gross income for 1948 as $484,981.44 of which $347,489.99 was reported as received from the operation of student minister training projects, and $137,491.45 from contributions and gifts. In 1949 gross income of $409,590.05 was reported, of which $352,528.70 was from the operation of student minister training projects and $56,033.27 was from gifts and contributions. On the Committee's returns as an apostolic society, the undistributed pro rata share of each member of the apostolic society was reported as $342.27 for 1948 and $316.17 for 1949. During the taxable years Peggy Lou Riker was a member of the Church. Prior to joining the Church Peggy Lou and her husband had operated a drug store in partnership with his parents. *119 The partnership was dissolved and Peggy Lou and her husband took the fixtures of the business and made a cash settlement with his parents. The fixtures were then used to set up a student minister training project to operate a restaurant under the name of "Your Food Fountain" (hereafter sometimes called the Fountain). Peggy Lou was manager of the project and the business license was in her name. Her duties included giving religious instruction to "members" of the project, who varied in number from 12 to 17. All of the receipts from the operation of the Fountain were turned over to the Committee on a form such as that described above, signed by Peggy Lou as project manager. Funds were in turn allocated by the Committee from the Church treasury for the operation of the Fountain and the living expenses of the members of the group. While the bankruptcy proceedings of the Church were pending, Peggy Lou sued the trustees in bankruptcy to establish her ownership of the equipment of the Fountain. An agreement was made in May 1947 between Peggy Lou and the trustees relating to the Fountain while the litigation was pending, which provided that Peggy Lou was to operate the establishment until *120 the law suit involving ownership was settled. The income during this period was to belong to Peggy Lou and she was to pay the trustees certain amounts to be deposited by the trustees in a trust fund account. All operating expenses were to be paid by Peggy Lou. From May 1947 until July 1948 the restaurant was operated under this agreement. Of this period, from May 1947 until January 1948 the restaurant was run as a "Church project," and the earnings were turned over to the Committee by Peggy Lou. From January 1948 until June 1948 Peggy Lou ran the business in private partnership with other persons who were not members of the Church, and from June until September 1948 she operated the business on a percentage basis with a prospective purchaser of the business. Her partnership share of the restaurant's earnings was contributed to the Committee. For five months of her fiscal year 1948, January 20 to June 30, Peggy Lou filed partnership returns for three different partnerships that operated the restaurant in this period. In July 1948 the assets of the restaurant were sold to the Committee for $1,500. Peggy Lou consented to the sale. Peggy Lou filed an income tax return for her fiscal *121 year 1948 (October 1, 1947 until September 30, 1948), which disclosed a net profit of $7,568.25 from the operation of a restaurant business under the name of "Your Food Fountain." A memorandum attached to the return read as follows: "ITEM 2. WAGES, etc. Taxpayer was employed by Own Business for a gross income of $8,959.11 during the taxable year. However, under the rules of the apostolic society (of which taxpayer is an associate) that all in the society share their income, $8,959.11 was contributed to and became a part of the income of the apostolic society, and is reported as part thereof. Taxpayer would, therefore, be taxed twice on the same income by reporting it as wages and also as a dividend. For this reason, this latter sum is reported only as part of the dividend or taxpayer's pro-rata share of the net income of said apostolic religious society. (See Item No. 3 Dividends). "ITEM 3. DIVIDENDS 1/575 interest in $217,001.54 net income of The Elected Delegates' Committee of The Ecclesiastical Society of CHRIST'S CHURCH OF THE GOLDEN RULE, an Apostolic Religious Association, for its accounting period of Oct. 1, 1947 to Oct. 1, 1948. This was not received as a dividend, *122 but is reported under Sec. 101 (18) - Per person in Association $377.39 Number of persons in taxpayer's family who were in association and obtained support from Society during period: 2 times $377.39 $754.78" In her return for 1948 Peggy Lou claimed the sum of $8,959.11 as gifts to the Church. This claim was disallowed by the Commissioner and this action was alleged as error in the original petition. In an amended petition it was prayed that the income of the Fountain be found to be the income of the Church. Facts with relation to petitioner Freda H. Grassmee Freda H. Grassmee was employed in a law office in Los Angeles during 1948 and 1949. She was a member of the Church. She contributed practically all of her salary for those years to the Committee. She and her mother lived in a Church residential project and participated in religious activities of the Church. Both received their support from the Church. Freda's income tax returns for 1948 and 1949 contained memoranda as to the disposition of her income similar to that attached to Peggy Lou's return. On her returns for both years she claimed a dependency exemption for her mother. The Commissioner disallowed the deductions *123 claimed as contributions to the Church in 1948 and 1949. In an amended answer he claimed increased deficiencies based on disallowance of the dependency credits claimed for Freda's mother. Opinion TIETJENS, Judge: In the petition originally filed petitioner Peggy Lou claimed that all of the income derived from the operation of the restaurant "Your Food Fountain" was donated by her to the Elected Delegates' Committee. By amendment to her petition she claimed that the income was not hers but was the Committee's; that her only income was her proportionate share of the Committee's net income for the year, which, though not actually received, was apportioned to her as a member of an "apostolic association." Peggy Lou made her return for 1948, the year in question here, on a fiscal year basis, October 1, 1947 until September 30, 1948. Our findings show that she entered into an agreement in May 1947 with the trustees in bankruptcy under which she was to operate the Fountain until her claim to ownership of the restaurant equipment was judicially determined. This agreement expressly provided that all funds derived from the operation of the restaurant were to belong to her, and she was *124 to make certain payments to the trustees. It appears that she continued to operate the restaurant under this agreement until July 1948, when the restaurant equipment was sold to the Committee. According to her testimony, during that part of her fiscal year from October 1947 to January 1948, she ran the restaurant as a Church project, she being project manager; and from January to June 1948 the restaurant was run as private business by a partnership of which she was a member. During the latter period the operation of the restaurant was not a Church project. Although the restaurant equipment was sold to the Committee in July 1948, Peggy Lou continued to operate the business until September 1948 on what she termed a "percentage basis" with another person who was interested in buying the property. Late in 1948 or early in 1949 the Fountain was sold, the Committee receiving the purchase price. In the October-January period the gross receipts of the business were turned over to the Committee by Peggy Lou as a gift, and in the same manner she turned over her share of the proceeds of the business in the January-June and June-September periods. On the basis of the foregoing evidence we think *125 it is clear that at least during the October to July period Peggy Lou operated the restaurant under the agreement with the trustees in bankruptcy and the income she received from its operation was hers and not the Committee's. Income is taxable to the one who earns it or otherwise creates the right to receive it and to enjoy the benefit of it when paid. Helvering v. Horst, 311 U.S. 112 (1940). The income was earned principally as a result of Peggy Lou's efforts in operating the restaurant. According to the agreement with the trustees she had an unqualified right to receive the funds from the operation of the restaurant and her testimony was that she actually received them. That her enjoyment of the income consisted of donating it to the Committee can not relieve her of the liability for tax on its receipt. Helvering v. Horst, supra.
The status of the income from the operation of the restaurant in the period from July to the end of Peggy Lou's fiscal year, September 1948, is less certain. There is no breakdown as to what amount of restaurant income was earned in this period. Petitioner has the burden of overcoming the correctness of respondent's determination *126 that the income was hers. To meet this burden the evidence is that the restaurant equipment was owned by the Committee in this period, and upon the sale of the restaurant late in 1948 or early in 1949, the purchase price went to the Committee. On the other hand, Peggy Lou testified that she operated the restaurant in this period on a percentage basis with a prospective purchaser, and that she received a share of the receipts of the business, which she donated to the Committee. On this state of the record we can hold only that petitioner has failed to meet her burden of proof, and that respondent's determination should stand. Having determined that the income from the operation of the restaurant was taxable to Peggy Lou, the next question is whether a part (15 per cent of her adjusted gross income) of the amount she turned over to the Committee may be deducted as a charitable contribution under section 23(o), Internal Revenue Code of 1939. The refusal of the respondent to permit any amount as a contribution to a religious organization was one of the assignments of error in Peggy Lou's amended petition. The same question is presented in the case of Freda Grassmee, who was privately *127 employed and turned over almost all of her income to the Committee. That part of section 23(o) which is pertinent here provides: "In computing net income there shall be allowed as deductions: "(o) Charitable And Other Contributions. - In case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of: "(2) a corporation, trust, or community chest, fund, or foundation, * * * organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * * to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's adjusted gross income." The respondent claims (a) that the Committee was not organized and operated exclusively for the purposes required by the statute, because one of its principal activities was the operation of various business ventures; and (b) that since the senior elder of the Church has exclusive control of the Church and its property, the earnings of the Church may inure to his benefit or to the benefit of other Church officials *128 who are empowered to request an election as senior elder. Our findings of fact show that according to the constitution and canon laws of the Church the Committee was set up to handle the temporal affairs of the Church, as distinguished from its spiritual or ecclesiastical affairs. In carrying out this purpose it operated a restaurant, a laundry, a lumber mill, and various other commercial enterprises, which were its principal sources of income during the years in question. In determining whether an entity is "organized and operated exclusively for religious, charitable, * * * or educational purposes" within the meaning of section 101(6), Internal Revenue Code of 1939, in order to determine its qualification as a tax exempt organization, this Court has denied exemptions to those organizations set up to engage in business activities, despite the fact that the income earned is to go to an exempt organization. So, even if we assume so far as this phase of the case is concerned, that the ecclesiastical society of the Church, the beneficiary of the Committee's earnings under the Church constitution, is a religious organization qualified under section 23(o) this does not help petitioners. *129 We are cognizant that some of the circuit courts have differed with us on this question, and hold that where the organization in question is operated to produce income for a tax exempt body, the producing entity is also exempt from taxation under section 101. Roche's Beach, Inc. v. Commissioner, 96 Fed. (2d) 776 (C.A. 2, 1938), reversing 35 B.T.A. 1087; C. F. Mueller Co. v. Commissioner, 190 Fed. (2d) 120 (C.A. 3, 1951), reversing 14 T.C. 922; contra, United States v. Community Services, 189 Fed. (2d) 421 (C.A. 4, 1951), certiorari denied, 342 U.S. 932 (1952). The language of section 101(6), "organized and operated exclusively for religious * * * purposes", is identical with that of section 23(o), which describes the types of organizations to which contributions are deductible. We think our decisions under section 101(6) should have equal applicability where the qualification of an organization under section 23(o) is in question. Following our prior decisions, we hold that the Committee was not organized and operated exclusively for religious purposes, because the reason for its organization, as shown by *130 the constitution and laws of the Church, was to conduct the temporal affairs of the Church and these in fact consisted principally of various commercial enterprises. Our holding that the Committee does not qualify as a religious organization to which contributions are deductible under section 23(o) does not completely dispose of the question of the deductibility of petitioners' contributions, since such contributions are deductible if "made * * * to or for the use of" a qualified organization. In John Danz, 18 T.C. 454 (1952), (acq. C.B. 1952-2, 1), we held that contributions to a trust set up to benefit exempt charitable organizations were deductible, even though the trust itself did not qualify as organized and operated exclusively for the purposes enumerated in section 101(6), since such contributions were "for the use of" the exempt charitable organizations. To the same effect is United States v. Weed, U.S.D.C. Mo., May 11, 1954; 1954 P.H. [*] 72,631). Our holding in John Danz cannot be aptly applied here, since we do not think that the ecclesiastical society of the Church can qualify as organized and operated exclusively for religious purposes. In that case there *131 was no question that the beneficiary organizations qualified under section 23(o), and the entity engaged in business was not carrying on the work of the beneficiary organizations. Here the laws of the Church provide specifically that a temporal agency is to act for the ecclesiastical Church. A temporal agency is required to be chartered by the ecclesiastical Church Government, and the charter may be revoked upon whatever terms the Church Government may designate. All property or income received by a temporal agency is to be held in trust for the benefit of the ecclesiastical society of the Church. Thus it is apparent that the Committee is an agency of the ecclesiastical society of the Church for carrying out the latter's temporal functions; this being so, its commercial activities should properly be ascribed to the ecclesiastical society itself in determining the latter's qualification under section 23(o). In fact, we have before us little evidence of activities of a purely spiritual nature, as commonly understood, being carried on by the Church. Although the ecclesiastical society was established to administer the spiritual functions of the Church, the Church's principal function *132 seems to have been the various projects supervised by the Committee, which were engaged in different business activities. Cf. Trinidad v. Sagrada Orden, 263 U.S. 578 (1924). This is understandable in light of the fundamental beliefs of the Church, which are not typical in that the emphasis is not on formal religious worship. The Church has no church buildings. Its principal reliance is on having its members live in a manner exemplifying Christ's teachings, particularly by living in a selfless manner. Its student minister training projects, while engaging in commercial activities, were designed to permit the public to witness the application of Christ's teachings to everyday life. Thus the very means chosen by the Church to attain its spiritual purpose involve engaging in commercial activities through its principal temporal agency, the Committee, and we cannot say that the ecclesiastical society was operated exclusively for religious purposes as required by section 23(o). Consequently the petitioners are not entitled to deductions for contributions for the use of a religious organization. The respondent has also disallowed the dependency exemptions claimed by Freda Grassmee *133 for her mother for 1948 and 1949. During these years the mother lived with Freda in a Church project and received her support directly from the Church. Freda's theory, we take it, is that part of the earnings she turned over to the Committee was for the support of her mother. There is no evidence that the support received by the mother was conditioned on the making of a contribution or the payment of money by Freda. We think the record supports the claim made in the Commissioner's answer that Freda did not contribute over half of the support of her mother and the Commissioner's claims for increased deficiencies are approved. Decisions will be entered under Rule 50.