The Joseph and Lottie Rabinovitz Foundation, Joseph Rabinovitz, Trustee v. Commissioner.
Rabinovitz Foundation v. Commissioner
Docket No. 57780.
United States Tax Court
T.C. Memo 1958-193; 1958 Tax Ct. Memo LEXIS 31; 17 T.C.M. (CCH) 958; T.C.M. (RIA) 58193; November 20, 1958
William Shelmerdine, Jr., Esq., 75 Federal Street, Boston, Mass., for the petitioner. Chester M. Howe, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax of $4,135.66 for 1948 and $42.35 for 1950. The questions presented are whether the petitioner was "organized and operated exclusively for * * * charitable * * * purposes" within the meaning of section 101(6) of the I.R.C. of 1939, and, alternatively, whether undistributed income of the years in question was deductible as "permanently set aside" for charitable purposes as provided in section 162(a) of the I.R.C. of 1939. The facts have been submitted by a stipulation of facts which is adopted as the findings of fact. The petitioner is the Joseph and Lottie Rabinovitz Foundation which was established under a December 8, 1943, declaration of trust. Lottie made the initial gift to the Foundation. The trust was irrevocable with no retention of any interest in the donor. The petitioner filed information returns as an organization exempt from tax under *33 section 101 of the I.R.C. of 1939 for 1948, 1949 and 1950 with the collector of internal revenue for the district of Massachusetts. The trust instrument provided that Joseph was to be the trustee until a vacancy occurred. Joseph, as trustee, was given extremely broad powers in dealing with the investment and disposition of the income and principal of the trust. Article III of the trust instrument provided as follows: "The trustees shall hold, invest and reinvest the trust property from time to time in their hands hereunder and shall pay currently the net income of said property to and among such charitable organizations as the trustees in their discretion shall from time to time determine. The trustees shall from time to time pay such portions or the whole of the principal of the trust fund at such times, in such amounts and to such charitable organizations as the trustees in their discretion may determine, PROVIDED, HOWEVER, that distributions of both income and principal under the foregoing provisions shall be made exclusively to charitable organizations the character of which is such that gifts to them would be deductible by a resident citizen of the United States of America *34 from gross gifts in computing net gifts under the Federal Gift Tax Law now effective. The term 'charitable' is used herein in the legal sense of that term. The trust shall continue until twenty (20) years after the date of the last to die of the said JOSEPH RABINOVITZ, the said LOTTIE RABINOVITZ and all of the said children of said JOSEPH RABINOVITZ and LOTTIE RABINOVITZ now living, and thereafter until the trustees shall have disposed of all the trust property in their hands." The petitioner received a letter dated March 4, 1947, from the Commissioner stating that it was entitled to exemption under section 101(6). Prior to October 1947, the petitioner was the owner of all of the capital stock of the Portland Cash & Carry Corporation. The petitioner, in October, caused Portland to be liquidated, and thereafter the petitioner operated the wholesale grocery business which had been conducted by Portland. The petitioner's gross receipts from the operation of the grocery business, its net income before making any contributions, its income other than income from the operation of the grocery business and its contributions made to exempt corporations during the years indicated are as follows: *35 Gross Receipts
from Grocery
Net Income
Business
Before
Other
Year
Operations
Contributions
Income
Contributions
1948
$446,664.16
$24,367.21
$ 289.68
$ 9,283.50
1949
363,773.13
11,956.31
1,538.14
17,053.75
1950
393,893.10
9,103.17
388.75
8,759.76
The Commissioner changed his earlier ruling of 1947 by a letter dated March 12, 1952, stating that the petitioner was not entitled to exemption under section 101(6) for the years 1947 to 1950, inclusive. The petitioner, after acquiring the assets of the grocery business, operated that wholesale grocery business for profit and subjected all of its assets and income to the risks of that business. This change was deliberate and not merely fortuitous. Cf. Alan Levin Foundation, 24 T.C. 15. There is no contention made that the petitioner did not have authority to operate the wholesale grocery business, and in any event it actually operated that business. Cf. Estate of Ernest G. Howes, 30 T.C. - (7-11-58). The evidence indicates that the operation of the wholesale grocery business was the principal activity of the petitioner during the taxable years, and its activity in contributing *36 some of its profits to charities suffered in comparison. The facts here are not different in any material respect from those in John Danz, 18 T.C. 454, affd. 231 Fed. (2d) 673, certiorari denied 352 U.S. 828, rehearing denied 353 U.S. 951, and following that case we hold that the petitioner was not operated during the taxable years exclusively for charitable purposes within the meaning of Section 101(6). The following quotation is from that case: "One of the requirements for exemption under section 101(6) is that the entity be 'organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes.' Among the purposes of the present trust during the taxable years was that of making money from the operation of retail candy stores and a hotel. Those were regular substantial businesses which normally subject the owners to tax. [1] They accounted for the larger part of the income of the trust and were in no sense merely incidental or even related to the operation of a charity. Cf. Squire v. Students Book Corp., 191 Fed. (2d) 1018. This trust did not operate any charity but was a 'feeder' *37 in that its property must ultimately go to a charitable organization. It was organized to do and the deed of trust authorized it to do the sort of thing which it actually did in operating these two profitable businesses. This Court has held that where a corporation was organized and operated to carry on a regular business under circumstances similar to those here present, it is not exempt by section 101(6) because it was not organized and operated 'exclusively' for the purposes mentioned in that provision. The subject has been fully discussed both by this Court and by the Court of Appeals for the Fourth Circuit. The Tax Court has also indicated that it had not changed its thinking on this point despite a reversal by the Court of Appeals for the Third Circuit which chose to follow Roche's Beach, Inc. v. Commissioner, 96 Fed. (2d) 776. Cf. C. F. Mueller Co., 14 T.C. 922, revd. 190 Fed. (2d) 120; Joseph B. Eastman Corporation, 16 T.C. 1502; Donor Realty Corporation, 17 T.C. 899; United States v. Community Services, Inc., 189 Fed. (2d) 421. The present case is not distinguishable in principle from those cases *38 because the trust did not take over an existing business, Donor Realty Corporation, supra, or because it did not intend to operate the hotel any longer than might prove to be necessary to find a suitable lessee. The trust is not exempt from tax under section 101(6). The answer to the second question of whether income "during the taxable year [was] paid or permanently set aside" for charitable purposes during the taxable year so that a deduction would be allowed for it under section 162(a) is also found in John Danz, supra. Here, as there, there was no requirement in the trust instrument that any part of the income *39 of the trust should be paid annually or permanently set aside for charitable purposes. The trustee did not "pay currently the net income of said property" to charities. His charitable contributions in 1948 were less than 39 per cent of the income for that year, his contributions for 1949 were in excess of the net income for that year and his contributions for 1950 were somewhat less than the total net income of the petitioner for that year. The undistributed income remained at the risk of the business. The Commissioner has given the petitioner the full deduction of all amounts which were actually paid to charities during the taxable years, and it is only the undistributed income that is in question. Nothing is shown which would indicate that that income was "permanently set aside" for charitable purposes. It was potentially working capital for the business and was at the risk of the business. The fact that all income and principal might go to charity in years hence does not satisfy this section of the statute. John Danz, supra. The petitioner was not operated exclusively for charitable purposes, and no part of the trust income for 1948 and 1950 which was undistributed *40 at the end of those years was paid or permanently set aside for charitable purposes. Decision will be entered for the respondent. Footnotes
1. Income from those businesses would not be exempt under the 1950 Amendments. See section 301, Revenue Act of 1950. Substantially all of the work of carrying on the candy shops was not performed without compensation. See section 422(b) provided by that amendment. Section 302(a) of the Revenue Act of 1950 does not apply because this was unrelated business income. [No reference to the application of the 1950 amendments to the present case has been made by either party and for reasons similar to those stated above they appear inapplicable.]"↩