Paul V. Eldor v. Commissioner.
Eldor v. Commissioner
Docket No. 74294.
United States Tax Court
T.C. Memo 1960-289; 1960 Tax Ct. Memo LEXIS 12; 19 T.C.M. (CCH) 1579; T.C.M. (RIA) 60289; December 30, 1960
*12 Paul V. Eldor, pro se. 85 4th Street, San Francisco, Calif. John O. Hargrove, Esq., and Aaron S. Resnik, Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in petitioner's income tax for the calendar years 1953, 1954 and 1955 as follows: Year
Deficiency
1953
$ 901.82
1954
1,348.05
1955
1,420.44
Total
$3,670.31
The issues for our determination are whether respondent was correct in treating the income from certain alleged trusts as taxable to petitioner and in denying certain interest deductions. Findings of Fact Paul V. Eldor, hereinafter referred to as petitioner, is a cash basis taxpayer residing in San Francisco, California. He filed timely income tax returns for the taxable years involved with the district director of internal revenue in San Francisco. In 1936 petitioner executed an instrument entitled "The P. V. Eldor Charity Trust," hereinafter referred to as P. V. P. V. was drafted in New Jersey and made irrevocable in 1948. It purports to be for the benefit of "The First Church of Christ Scientist in Boston, Mass.," hereinafter called the Church. *13 Petitioner is both grantor and trustee of the trust. The income from P. V. is to go to the Church's charitable fund for indigent practitioners and nurses, but the trustee (petitioner) is empowered to withhold income as he deems necessary, and has done so regularly, and although $70 of income may have been paid to the Church in some years, nothing was paid in any of the years in issue. Among the trustee's broad powers to do anything he deems necessary to accomplish the trust objectives are the power to hold title to securities in his individual name without revealing the interest of the trust, the power to make unlimited charitable contributions, and the power to amend the trust to obtain tax advantages. P. V. has no income of its own, but relies solely on its alleged 75 per cent interest in The Eldor Charity Trust (described below). The Eldor Charity Trust was created by petitioner in New Jersey in 1939 as an irrevocable, investment trust. Petitioner was grantor and trustee, and although the instrument named a co-trustee, petitioner has functioned as sole trustee since 1950 or earlier. Petitioner funded this trust with $100 and the assets of a defunct business of unknown but doubtful *14 value. There is indication that this entire grant was soon lost and the fund of approximately $100,000 being administered by this trust during the years in issue consisted largely of what petitioner describes as "contributions" by P. V. Named beneficiaries of this trust were P. V., "persons who have contributed * * * when [if] indigent," a perpetual care fund for petitioner's burial lot, and "organizations who have qualified under section 101(6) of the Internal Revenue Code, to give them an investment opportunity in this Trust." Grantor (petitioner) reserved the right to add beneficiaries without limit "when [the same are] certified by a public charity." However, the instrument also provides that all income is to be paid to P. V., except that grantor's (petitioner's) living expenses were to be paid if "he is not able to provide for himself." The trustee of The Eldor Charity Trust has the powers he would have if he owned the trust property as an individual. Included among these is the power to amend the trust to prevent invalidity or any tax liability. Amendments have consisted of the unilateral crossing out by petitioner from time to time of provisions *15 which he believed created tax liability or made the trust invalid. During the years in issue, petitioner kept no personal or trustee's books, but filed trust income tax returns for 10 trusts (including those mentioned). Pertinent parts of those, and of petitioner's individual returns are summarized in the following tables: Paul V. Eldor
Year 1953
Form 1040
[ 1] Wages - as Waiter
$1,273.93
[ 2] Eldor Charity Trust - Wages to
Eldor
2,691.07
[ 3] Tips
760.00
[ 4] Dividends
[ 5] Interest - Eldor to Trust
(3,266.50)
[ 6] Capital Loss - Bad Note Receivable
[ 7] Fiduciary Allocations
[ 8] Tax Information
[ 9] Interest
[10] Telephone
(15.00) *
[11] Travel
(215.00) *
[12] Investment Information & Periodicals
(100.00) *
[13] Stationery - Stamps
(35.00) *
[14] Churches
(200.00)
[15] Sales Tax
(70.00)
[16] Waiter's Uniforms
(100.00)
[17] Union Dues
(48.50)
[18] Cash Short as Walter
(75.00)
Net Income
$ 600.00
Exemption
(600.00)
Taxable Income
None
Year 1954
[ 1] Wages - as Waiter
$3,002.21
[ 2] Commissions
165.58
[ 3] Eldor Charity Trust - Wages to
Eldor
445.00
[ 4] Tips
900.00
[ 5] Dividends
[ 6] Interest - Eldor to Trust
(3,756.79)
[ 7] Capital Loss - Carryover
[ 8] Fiduciary Allocations
[ 9] Interest Income
[10] Interest
[11] Telephone
[12] Travel
[13] Investment Information & Periodicals
[14] Stationery - Stamps
[15] Typing
[16] Uniforms & Cleaning & Pressing
(110.00)
[17] Union Dues
$ (36.00)
[18] Sales Tax
(10.00)
Net Income
$ 600.00
Dividend Exclusion
Exemption
(600.00)
Taxable Income
None
Year 1955
[ 1] Wages - as Waiter
$3,090.65
[ 2] Eldor Charity Trust - Wages to
Eldor
870.00
[ 3] Tips
895.00
[ 4] Dividends
[ 5] Interest - Eldor to Trust
(4,066.00)
[ 6] Capital loss - Bad Note Receivable
[ 7] Fiduciary Allocations
[ 8] Commissions Received
240.00
[ 9] Interest Income
[10] Telephone
[11] Typing & Notary
[12] Travel
[13] Investment Information & Periodicals
[14] Stationery - Stamps
[15] Sales Tax
$ (15.50)
[16] Uniforms & Cleaning & Pressing
(115.00)
[17] Union Dues
(38.50)
[18] Food Charge at $5 per week
(260.00)
[19] Charitable Deduction
Net Income
$ 600.65
Dividend Exclusion
Exemption
(600.00)
Taxable Income
$ 0.65
*16 Paul V. Eldor, Trustee
The Eldor
P. V. Eldor
Eldor
Eldor
Eldor
Irrev.
Irrev.
Irrev.
Charity
Charity
Trust No.
Trust No.
Trust No.
Trust
Trust
I
II
III
Year 1953
11-15-39
10-1-36
11-15-39
11-15-39
11-15-39
[ 1]
[ 2]
($2,691.07)
[ 3]
[ 4]
3,147.87 **
[ 5]
3,266.50
[ 6]
(1,000.00)
[ 7]
(2,602.00)
$110.00
$110.00
$110.00
$110.00
[ 8]
(10.00)
(10.00)
(10.00)
(10.00)
(10.00)
[ 9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
Net Income
$ 100.54
$100.00
$100.00
$100.00
$100.00
Exemption
(100.00)
(100.00)
(100.00)
(100.00)
(100.00)
Taxable Income
$ 0.54
None
None
None
None
Year 1954
[ 1]
[ 2]
[ 3]
($ 445.00)
[ 4]
[ 5]
2,819.00
[ 6]
3,756.79
[ 7]
(1,000.00)
[ 8]
(4,761.79)
$350.00
$350.00
$350.00
$350.00
[ 9]
414.00
[10]
(154.00)
[11]
(20.00)
[12]
(50.00)
[13]
(79.00)
[14]
(115.00)
[15]
(15.00)
[16]
[17]
[18]
Net Income
$ 350.00
$350.00
$350.00
$350.00
$350.00
Dividend Exclusion
(50.00)
(50.00)
(50.00)
(50.00)
(50.00)
Exemption
(300.00)
(300.00)
(300.00)
(300.00)
(300.00)
Taxable Income
None
None
None
None
None
Year 1955
[ 1]
[ 2]
($ 870.00)
[ 3]
[ 4]
2,989.00
[ 5]
4,066.00
[ 6]
1,000.00
[ 7]
(5,150.00)
$350.00
$350.00
$350.00
$350.00
[ 8]
[ 9]
1,029.00
[10]
(15.00)
[11]
(49.00)
[12]
(125.00)
[13]
(120.00)
[14]
(140.00)
[15]
[16]
[17]
[18]
[19]
(240.00)
Net Income
$ 375.00
$350.00
$350.00
$350.00
$350.00
Dividend Exclusion
(50.00)
(50.00)
(50.00)
(50.00)
(50.00)
Exemption
(300.00)
(300.00)
(300.00)
(300.00)
(300.00)
Taxable Income
$ 25.00
None
None
None
None
*17 In The Eldor Charity Trust - Paul V. Eldor, Trustee
Louis Lowy
Elizabeth
Burial
Trust for
Trust for
Trust
Lowy Trust
Trust
Trustee
Employees
Year 1953
11-15-39
11-15-39
11-15-39
11-15-39
11-15-39
[ 1]
[ 2]
[ 3]
[ 4]
[ 5]
[ 6]
($1,000.00)
($1,000.00)
[ 7]
1,110.00
722.00
$110.00
$110.00
$110.00
[ 8]
(10.00)
(10.00)
(10.00)
(10.00)
[ 9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
Net Income
$ 100.00
($ 278.00)
$100.00
$100.00
$100.00
Exemption
(100.00)
(100.00)
(100.00)
(100.00)
(100.00)
Taxable Income
None
None
None
None
None
Year 1954
[ 1]
[ 2]
[ 3]
[ 4]
[ 5]
[ 6]
[ 7]
($1,000.00)
($1,000.00)
[ 8]
1,155.79
1,156.00
$350.00
$350.00
$350.00
[ 9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
Net Income
$ 155.79
$ 156.00
$350.00
$350.00
$350.00
Dividend Exclusion
(50.00)
(50.00)
(50.00)
(50.00)
(50.00)
Exemption
(300.00)
(300.00)
(300.00)
(300.00)
(300.00)
Taxable Income
None
None
None
None
None
Year 1955
[ 1]
[ 2]
[ 3]
[ 4]
[ 5]
[ 6]
($1,000.00)
($1,000.00)
[ 7]
1,350.00
1,350.00
$350.00
$350.00
$350.00
[ 8]
[ 9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
Net Income
$ 350.00
$ 350.00
$350.00
$350.00
$350.00
Dividend Exclusion
(50.00)
(50.00)
(50.00)
(50.00)
(50.00)
Exemption
(300.00)
(300.00)
(300.00)
(300.00)
(300.00)
Taxable Income
None
None
None
None
None
*18 The 8 trusts shown above (other than P.V. and The Eldor Charity Trust) are all apparently oral. The interest claimed on petitioner's individual returns (above) was on 10 notes of $6,000 each, payable to various of the 10 trusts. Seven notes were signed by petitioner and 3 by Anton Czeczerski, with petitioner guaranteeing interest, computed at 10 per cent compounded monthly. The Eldor Charity Trust reported the receipt of all such amounts deducted by petitioner, although it was the payee on but 2 of the notes. The trusts lacked substance, and were formed solely to avoid income taxes. Petitioner in fact did not part with any assets, and retained complete control of the corpus of the trusts. No interest was ever paid by petitioner to any of the trusts, nor did they furnish any consideration for the notes. Opinion Although the lay nature of petitioner's advocacy and his failure to enlighten us with any brief leave us in some doubt as to his position, it appears to be first, that he has no right to trust corpus or income, and therefore cannot be taxed; and second, that the amendment provisions of the written trusts give him unlimited license to amend as he goes along, even orally *19 or in his own mind, if he considers amendment necessary to avoid taxation. At the trial, petitioner stated he was relying on John Danz, 18 T.C. 454. One quotation will suffice to distinguish: (Pages 461-462) This trust was irrevocable and the grantors retained no powers to change it in any way. * * * The grantors as such retained no managerial powers over the trust property. There was no purpose in the creation of the trust to benefit the grantors or members of their immediate family in any way, and the trust was not operated during the taxable years to benefit that group. * * * Respondent has presented various arguments in support of his position. One is sufficient. On the facts of record, these trusts were shams to be disregarded for tax purposes because of petitioner's dominion and absolute control. Helvering v. Clifford, 309 U.S. 331. See also William C. Rands, 34 B.T.A. 1107, where we said at page 1115: This is not to say as a general rule that the income of a trust legally created and administered may be lightly attributed to the settlor and taxed to him. When, however, one attempts such a scheme, particularly by placing himself *20 in the equivocal position of being both the settlor and the trustee, he must execute the plan with the most exact, even meticulous, adherence to it. The integrity of each detailed act must be established. If there is any shilly-shallying by him, he can not expect the Government to give recognition to a structure for which he himself has less than a high regard. While a tax-saving motive does not vitiate a plan otherwise legal, it may serve, when coupled with loose and inexact administration, to confirm a suspicion that the plan is one without substance or reality. * * * Our disposition of the first issue makes unnecessary a consideration of the correctness of the interest deductions, since the trusts are not to be treated as separate entities for tax purposes. Decision will be entered for the respondent. Footnotes
*. Allegedly spent earning wages from The Eldor Charity Trust.↩
**. Includes interest of $263.37.↩