ALICE TULLY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4783–65. Filed May 26, 1967.

*Frank J. Dillon* and *James McGarry*, for the petitioner.
*Rudolph J. Korbel* and *J. J. Lander*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1959 in the amount of $16,061.90.

The issue for decision is whether the value of remainder interests in two irrevocable trusts executed by petitioner in 1959 constituted chari-

table contributions in that year to organizations described in section 170(b)(1)(A) of the Internal Revenue Code of 1954.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner is an individual who resided in New York, N.Y., at the date of the filing of the petition in this case. Her individual income tax return for the calendar year 1959 was filed with the district director of internal revenue, Manhattan District, New York, N.Y.

By instruments dated and executed on December 11, 1959, petitioner established two irrevocable trusts. The principal income beneficiary under one of these trusts is James Carlton Gauld and this trust will hereinafter be referred to as the Gauld Trust. The principal income beneficiary under the other trust is Mildred Mann, and this trust will hereinafter be referred to as the Mann Trust. In both trusts petitioner is named as a secondary income beneficiary. James Carlton Gauld and Mildred Mann are both presently alive.

On December 11, 1959, petitioner transferred 280 shares of common stock in Corning Glass Works to the Gauld Trust and 280 shares of such common stock to the Mann Trust. The then value of the remainder interests in the Gauld and Mann Trusts as determined by reference to the actuarial tables set forth in respondent's regulations was determined to be $19,159.23 and $18,640.28, respectively. The Gauld Trust contains the following provision with respect to the disposition of the trust income and corpus:

SECOND: The Trustee shall hold the Trust Estate in trust until the death of the survivor of the Settlor and James Carlton Gauld, who now resides at No. 231 East 35th Street, New York, New York; shall manage, invest and reinvest the Trust Estate; shall collect and receive the income thereof; and, after deducting all charges and expenses properly payable therefrom, shall pay the net income and the principal thereof as follows:

(A) The Trustee shall pay to the said James Carlton Gauld, at least quarter-annually, (1), until the end of the calendar year ending on December 31, 1963, or until the death of the said James Carlton Gauld, whichever shall first occur, all of the net income of the Trust Estate; and (2), after December 31, 1963, such portion or portions, or all, of the net income of the Trust Estate as the Trustee, in his discretion, shall deem advisable, and shall accumulate the unexpended net income, if any, for the benefit of the said James Carlton Gauld until his death; and the Trustee, from time to time, shall pay to the said James Carlton Gauld such portion or portions, or at any time all, of the accumulated net income as the Trustee, in his discretion, shall deem advisable, until the death of the said James Carlton Gauld, and, upon the death of the said James Carlton Gauld, the Trustee shall pay all of the accumulated net income then held by him, if any, to the estate of the said James Carlton Gauld.

(B) After the death of the said James Carlton Gauld, if the Settlor survives him, the Trustee shall pay all the net income of the Trust Estate to the Settlor, at least quarter-annually, until her death.

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

237

(C) Anything herein contained to the contrary notwithstanding, in each instance in which net income, and in each instance in which accumulated net income, would otherwise be payable to a beneficiary during his or her lifetime under the foregoing provisions of this article SECOND, the Trustee himself may apply such net income, or such accumulated net income, for the benefit of such beneficiary, if the Trustee, in his discretion, shall deem it advisable to do so.

(D) Upon the death of the survivor of the Settlor and the said James Carlton Gauld, the Trustee shall pay the principal of the Trust Estate as follows:

(1) The Trustee shall pay the said principal to such charity or charities, as hereinafter defined, and in such shares and proportions, as the Settlor may appoint by her last will and testament or codicil thereto; provided, however, that no appointment shall be made hereunder except to a corporation or corporations meeting the limitations of the Special Rule set forth in subdivision (b) (1) (A) of Section 170 of the Internal Revenue Code of 1954, as the same may be amended.

(2) To the extent that the power of appointment set forth in the preceding subdivision (1) hereof shall not have been effectively exercised, the Trustee shall pay the said principal in equal shares to: The President and Fellows of Harvard College, a Massachusetts corporation having an office in Cambridge, Massachusetts, or its successor, requesting, but not enjoining, that, if practicable, the property received by it be used by its Fogg Museum for archeological exploration and research, preferably in Sardis, Turkey; and the Trustees of the University of Pennsylvania, a Pennsylvania corporation having an office in Philadelphia, Pennsylvania, or its successor, requesting, but not enjoining, that, if practicable, the property received by it be used by its University Museum for archeological exploration and research, preferably on the Tikal Project or other projects in Guatemala.

The Mann Trust contains an identical provision except the name "Mildred Mann" appears in that trust wherever the name "James Carlton Gauld" appears in the Gauld Trust.

Petitioner, on her Federal income tax return, reported adjusted gross income of $1,671,880.19, listed charitable contributions totaling $372,724.91 with a maximum deduction of $334,376.04, arrived at by applying 20 percent to her reported adjusted gross income, and listed further contributions of $171,288.26 stated to be to organizations of the type described in section 170(b) (1) (A) with a maximum deduction of $167,188.02, arrived at by applying 10 percent to her adjusted gross income, thus computing an amount of $501,564.06 which she claimed as a deduction for charitable contributions in the year 1959. The last two items shown in petitioner's schedule of contributions in arriving at the $171,288.26 which she showed to constitute contributions to which the additional 10 percent of adjusted gross income was the applicable limitation of the deduction were the $19,159.23 value of the remainder interest in the Gauld Trust and the $18,640.28 value of the remainder interest in the Mann Trust.

Respondent in his notice of deficiency disallowed the amount of $33,699.27 of the contributions claimed by petitioner with the explanation that it had been determined that the value of the remainder interest in the Gauld and Mann Trusts "were not made to such organizations which qualify as charitable contributions under the special rule of section 170(b) (1) (A) of the Internal Revenue Code of 1954."

Section 170(a) provides for the allowance of a deduction for charitable contributions as defined in section 170(c), payment of which is made in the taxable year. Section 170(b)(1) imposes limitations upon the amount of contributions which an individual may deduct in any taxable year. The general limitation set forth under section 170(b)(1)(B) is 20 percent of adjusted gross income, but section 170(b)(1)(A) provides for the allowance of an additional deduction not to exceed 10 percent of adjusted gross income for "any charitable contribution to" the organizations specified in clauses (i) through (iii) of section 170(b)(1)(A). Section 170(c) provides that the term "charitable contribution" means contribution or gift "to or for the use of" the various organizations set forth in paragraphs (1) through (5) of section 170(c).

Respondent takes the position in the instant case that petitioner's contribution of the remainder interests of the Gauld and Mann Trusts was not "to" an institution or organization set forth in section 170(b)(1)(A), and since petitioner had otherwise absorbed the 20-percent limitation provided in section 170(b)(1)(B) it was immaterial that these remainder interests might be contributions "for the use of" an organization listed in either section 170(c) or section 170(b)(1)(A).

Respondent's argument is that irrespective of what organizations are ultimately the recipient of the remainder interests, the terms of the Gauld and Mann Trusts were such that no contribution had been made in 1959 "to" an organization specified in section 170(b)(1)(A).

Petitioner takes the position that respondent has recognized in Rev. Rul. 57–507, 1957–2 C.B. 511, that by naming a specific organization listed in section 170(b)(1)(A) as the recipient of the remainder interest of an irrevocable trust, the grantor has made a charitable contribution "to" that organization in the year the trust is created to the extent of the value of the remainder interest of the property transferred to the trust.[2] Without specifically so arguing, petitioner infers

---

[2] Insofar as here applicable, Rev. Rul. 57–507, 1957–2 C.B. 511, 513, states:

Pursuant to the agreement, the taxpayer also entered into an agreement of trust which was made a part of the separation agreement. Under the terms of the trust, the taxpayer agreed to transfer certain income producing property to the trust. The income from the trust is to be paid to the wife during her lifetime. In the event of her remarriage, the income payable to her will be reduced to 400x dollars or the net income of the trust whichever shall be less. Any net income in excess of 400x dollars in such event will be paid to the taxpayer if living, or, if he is not living, to the remainderman of the trust, a specified educational institution.

*        *        *        *        *        *        *

The present value of the remainder interest in the property transferred to the trust is deductible as a contribution by the taxpayer in the manner and to the extent provided by section 170 of the Code. Since the owner of the remainder interest is in an "educational organization" as that term is used in section 170(b)(1)(A) of the Code, the additional ten percent deduction provided in that section is applicable. The present value of the remainder interest is to be determined according to the age of the income beneficiary and the fair market value of the property as of the date of transfer to the trust.

that she was entitled to rely on this revenue ruling since it was outstanding in 1959 when she executed the Gauld and Mann Trust.[3]

Respondent does not specifically repudiate Rev. Rul. 57–507, *supra*, confining his argument in this regard to a factual distinction in the ruling which involved a remainder interest to a specifically named organization and the provisions of the trusts in the instant case, which while naming two specific organizations permitted petitioner to substitute by appointment in her will, another charity or charities meeting

[3] Petitioner points to the fact that recently respondent proposed a new regulation in which clause (vii) of par. (b) (1) of sec. 1.170–2 contained the following provision (30 Fed. Reg. 14159 (1965)) :

Sec. 1.170–2   Charitable deductions by individuals ; limitation.

\*      \*      \*      \*      \*      \*      \*

(b)   Additional 10-percent deduction—(1) *In general.* \* \* \*

\*      \*      \*      \*      \*      \*      \*

(vii) \* \* \*

To qualify for the additional 10-percent deduction the contributions must be made "to" and not merely "for the use of", one of the specified organizations. A contribution shall be considered as made "to" an organization referred to in section 170(b) (1) (A) only if the organization is given money or other property absolutely and forever for its immediate, sole, and exclusive use, benefit, and enjoyment. For purposes of the preceding sentence, money or other property may be considered as given absolutely and forever for the immediate, sole, and exclusive use, benefit, and enjoyment of an organization referred to in section 170(b) (1) (A) even though the donor expresses a desire, or specifically provides, that the organization shall use the money or property for a specific purpose in the exercise or performance by such organization of its purpose or function as an organization referred to in section 170(b) (1) (A) or that the organization shall use only the income generated by the donated money or property in the exercise or performance of such purpose or function. Accordingly, the contribution of a future interest in intangible or real property made (or the contribution of a future interest in tangible personal property which, pursuant to the provisions of paragraph (d) (2) (i) of § 1.170–1, is treated as made) after (insert date on which the notice of proposed rule making is published in the Federal Register) shall be considered as made "for the use of" rather than "to" the organization. Further, a contribution to a trust where the beneficiary is an organization referred to in section 170(b) (1) (A) shall be considered as made "for the use of" rather than "to" the organization.

Petitioner states that the fact that the above-quoted proposed regulation was not adopted by respondent is an indication that respondent still takes the position stated in his unrevoked Revenue Ruling 57–507, 1957–2 C.B. 511, and a taxpayer is therefore entitled to rely on this ruling.

Respondent's Announcement 66–3 which was based on T.I.R. 792, dated Dec. 17, 1965, contained in Part VI, I.R.B. 1966–1, 23–24, states :

The proposed amendment to the regulations under sections 170, 381, 545, and 556 of the Internal Revenue Code of 1954, relating to charitable, etc. contributions and gifts, was published in the Federal Register for November 10, 1965.

A public hearing on the provisions of this proposed amendment, exclusive of the portion of the amendment which would revise paragraph (b) (1) of § 1.170–2 to classify contributions of deferred interests in property, for purposes of the additional 10-percent limitation, as contributions "for the use of" rather than "to" the recipient organization, will be held on Thursday, January 13, 1966, at 10 :00 a.m., E.S.T., in Room 2326, Internal Revenue Building, Twelfth and Constitution Avenue, NW., Washington, D.C.

The portion of the proposed amendment relating to the classification of contributions of deferred interest in property as being "for the use of" the charitable organization will be given further study and will not be on the agenda for discussion at the hearing on January 13, 1966. Any decision to adopt such portion of the amendment will be preceded by a public hearing. If such portion of the proposed amendment is subsequently adopted, it will be made effective only for contributions made after the date on which adoption of the amendment is published in the Federal Register, rather than for contributions made after November 10, 1965, as originally proposed.

Persons who plan to attend the hearing on January 13, 1966, are requested to notify the Commissioner of Internal Revenue, Attention : CC :LR :T, Washington, D.C. 20224, by January 10, 1966. Telephone (Washington, D.C.) 964–3970.

the limitations of the special rule set forth in section 170 (b) (1) (A) of the Internal Revenue Code as it may be amended. However, certain of respondent's arguments tend to be contradictory to the holding of his revenue ruling. Respondent argues that Congress did not intend for a gift of a remainder interest in trust to be a gift "to" an organization named in section 170(b) (1) (A). In support of this argument respondent quotes the following language from the report of the Committee on Ways and Means to accompany H.R. 8300:

> In addition to consolidation, section 170 of the bill contains the following substantive changes:
> Subsection (b) (1) (A) provides a new special rule which increases the permissible maximum allowable as a deduction by individuals for charitable contributions from 20 percent of adjusted gross income under the 1939 Code to 30 percent under the bill, provided that at least 10 percent of the gifts and contributions are made to organizations specified in clauses (i), (ii), and (iii). *It is to be noted that such charitable contribution must be paid to the organization and not for the use of the organization. Accordingly, payments to a trust (where the beneficiary is an organization described in said clauses (i), (ii), or (iii)) are not included under this special rule.* [Emphasis added. H. Rept. No. 1337, 83d Cong., A 53 (1954).]

A similar statement is contained in the report of the Senate Finance Committee on H.R. 8300. (S. Rept. No. 1622, 83d Cong., 2d Sess., p. 207 (1954).)

Petitioner answers this argument of respondent's by stating that the words "payments to a trust" in this report were intended to refer to payments to a trust the income of which was to be used by the trustee for the benefit of charities such as were involved in *H. H. Bowman*, 16 B.T.A. 1157 (1929), and *John Danz*, 18 T.C. 454 (1952), affirmed on other issues 231 F. 2d 673 (C.A. 9, 1955), and not to the value of the remainder interest in property transferred to a trust for the purpose of having the income from the property paid to non-charitable beneficiaries for such a beneficiary's life or some stated number of years. The *Bowman* case involved a trust, the income of which was to be used for charitable purposes and we held that for the year 1920, which was subject to the provisions of the Internal Revenue Act of 1918, a charitable deduction was not allowable for the value of property transferred to the trust because no contribution was made "to a charity," although the contributions to the trust were intended to produce income which was to be used for the benefit of charity, but that for the years subject to the Revenue Act of 1921, where the charitable deduction was allowable if a contribution was "to" or "for the benefit of" a charitable organization, the deduction was allowable since the contributions to the trust were "for the benefit of" a charity.

Petitioner states that in *James L. Darling*, 43 T.C. 520 (1965), respondent specifically conceded that if the provisions of the trust

there involved did not leave such powers of control in the settlor as to result in no effective gift having been made, the gift of the remainder was to an organization of the type provided for in section 170 (b) (1) (A) and entitled to the additional 10-percent limitation. Petitioner points to the following statement in that case (43 T.C. at 529) :

The parties are in agreement that during each of the taxable years involved, petitioners made conveyances of undivided fractional remainder interests in improved real property to a private trust for the benefit of Westminster College. The parties have stipulated that Westminster College is an educational institution exempt from Federal income tax under the provisions of section 501 (c) (3) and that gifts thereto may be deducted for income tax purposes under section 170. Further, in the event it is determined herein that petitioners are entitled to the claimed charitable gift deductions, respondent concedes on brief that there is no longer any issue involved because the conveyances were made to a private trust for the use and benefit of Westminster College instead of directly to the latter and, accordingly, that petitioners are entitled to treat their gifts as made to an *educational organization subject to the limitations of both subsections (b) (1) (A) and (b) (1) (B) of section 170* (that is, the 30-percent limitation) rather than the sole limitation of subsection (b) (1) (B) as originally contended by respondent. * * * [Emphasis supplied.]

The facts in *James L. Darling, supra,* show that the trust among other things, provided that "This Agreement may be amended or modified at any time by the donors, provided that no amendment or modification shall be made which will result in preventing the Trust Fund from being tax exempt and the donations to the Trust Fund from being deductible from the taxable income of the donors."

Respondent answers petitioner's argument by stating that since the decision in the *Darling* case was that because of the powers retained by the donors, no gift of an ascertainable value was made in the year when the trust instrument was executed, any statement with respect to respondent's concession was unnecessary to the decision, and further that the statement made on page 536 of the opinion in *James L. Darling, supra,* that "when they [certain of the trust provisions] are considered together with the petitioners' reserved rights to remove the trustee, to alter or modify the trust even to the extent of naming a new or different charitable remainderman, and to dictate how trust funds shall be invested or reinvested, the difficulty of severing the charitable remainder from the private reserved interests is apparent, and likewise the ascribing of a present value to such remainder becomes well-nigh impossible," does not find support in the facts found in that case, insofar as it refers to the reservation by the grantors of the trust of the right to modify the trust by naming a new or different charitable remainderman.

We agree with respondent that this Court did not decide the issue of the applicability of section 170 (b) (1) (A) in the *James L. Darling* case

and the citation by petitioner of that case would bear only on respondent's interpretation of his Rev. Rul. 57–507, *supra*. However, respondent's concession in the *James L. Darling* case, as well as respondent's withdrawal from public hearing his proposed regulation published November 10, 1965, with respect to gifts of remainder interests of property transferred to trusts not being "to" the named charity, substantiates petitioner's contention that respondent's argument in the instant case is generally contrary to his published ruling. Petitioner did not plead and does not contend that equitable estoppel is applicable here. Moreover, respondent's Rev. Rul. 57–507, *supra*, does not have the force and effect of law but is merely a statement of respondent's opinion and is only so considered by this Court. Therefore, we will decide the question of whether the gift of a remainder interest of the type here involved to a specifically named organization described in section 170(b)(1)(A) is a contribution "to" such organization or only "for the benefit" of that organization before reaching the question of whether the reservation of the right to change the beneficiary to another organization listed in section 170(b)(1)(A) "as the same may be amended" causes a gift which would otherwise be "to" the specifically named organization to be only "for the benefit of" an organization listed in section 170(b)(1)(A).

In *William D. O'Brien*, 46 T.C. 583, 593 (1966), we pointed out that gifts of the remainder interests and of nonreversionary trust interests for the use of qualified charities are deductible, specifically referring to section 1.170–1(d) and section 1.170–2(d), Income Tax Regs. In that case we stated:

> It is equally clear that the trust itself does not have to be the type described in section 170(c)(2) in order for gifts to it to be deductible. *John Danz*, 18 T.C. 454 (1952), affirmed on other issues 231 F. 2d 673 (C.A. 9, 1955); and *Denver & Rio Grande Western Railroad Co.*, 38 T.C. 557 (1962). The statutory words "for the use of" are synonymous with "in trust for," and a gift "in trust for" an organization described in section 170(c)(2) is "for the use of" such an organization, even if the trust does not qualify under such section. See Rev. Rul. 57–562, 1957–2 C.B. 159.
>
> Nor is retention by petitioners of the right to substitute other qualifying charities for those named in the trust instrument incompatible with deductibility. *Winthrop* v. *Meisels*, 281 F. 2d 694 (C.A. 2, 1960).

While we stated in the *William D. O'Brien* case that gifts of remainder interests in trusts "for the use of" qualified charities are deductible, we did not state, nor does our holding therein require, the conclusion that a gift of a remainder interest in property transferred to a trust for the trustee to use the income from the property for the benefit of life beneficiaries is not a transfer of the remainder interest "to" the remainderman. Although the property is transferred to a trust for the trustees to manage it and distribute the income to or for the benefit of

the life beneficiary during his lifetime, the trust instrument may be interpreted as transferring the remainder interest "to" the named remainderman.

In the instant case the trust instrument provides that upon the death of the life beneficiaries "The Trustee shall pay the said principal to such charity or charities, as hereinafter defined, * * *." No discretion is left with the trustee and the trust instrument itself makes the gift of the "remainder interest" as distinguished from the total property which is transferred to the trust a gift "to" the charity. The 280 shares of Corning Glass Works stock were given to each of the trusts "for the use of" the life beneficiaries since the income from this property or any other property for which the shares might be exchanged by the trustee or which might be acquired by the trustee from funds received from the sale of the property originally transferred to the trust were to go to the life beneficiaries. However, the "remainder interest" in the trust principal, a different property from the 280 shares of Corning Glass Works stock was a gift "to" charities.

Respondent's Rev. Rul. 57–507, *supra*, recognizes this distinction in the properties transferred to the trust for the use of the life beneficiaries and the property consisting of the "remainder interest" in the trust and recognizes that where the organization to receive the remainder interest is specifically named, the gift of the "remainder interest" is "to" the specifically named organization. It is our opinion that in this respect respondent's Rev. Rul. 57–507, *supra*, correctly interprets the law. In the instant case if the trustee were required to pay the trust remainder to the president and fellows of Harvard College and the trustees of the University of Pennsylvania without any right being retained by the petitioner to change these beneficiaries, we would conclude that petitioner in 1959 made a gift of the "remainder interests" in the Gauld and Mann Trusts "to" Harvard College and the University of Pennsylvania. We must, therefore, consider whether the right reserved by petitioner to appoint by her will a corporation or corporations other than Harvard College and the University of Pennsylvania provided such corporation or corporations meet the limitations set forth in "subdivision (b) (1) (A) of section 170 of the Internal Revenue Code of 1954, as the same may be amended" causes the gift not to be "to" such an organization but only "for the use of" such an organization. The retention of the right to substitute other beneficiaries for the otherwise named beneficiaries does not cause the gift not to be "to" such beneficiaries in 1959 since under New York law any such appointed beneficiary will derive its title to the property from the trust created in 1959 and will not from the instrument making the appointment. *In re Harbeck's Will*, 161 N.Y. 211, 55 N.E. 850 (1900). However, it is possible, as respondent argues, that section 170(b)(1)(A) might be

amended so as to include in years subsequent to 1959 organizations not included therein in 1959 so that by substituting the name of the appointed beneficiary for the named beneficiary by reading the name of the appointee into the original instrument (*In re Harbeck's Will, supra*), the gift would be to organizations which did not come within the provisions of section 170(b)(1)(A) applicable to the year 1959 when the gift was made. Since the trust instruments provide that to the extent the powers of appointment retained by petitioner have not been "effectively exercised" the remainder interests are to go to Harvard College and the University of Pennsylvania, the question arises of whether a designation of an organization not listed in section 170(b)(1)(A) as applicable to gifts made in 1959 would be an "effective exercise" of the power of appointment. As petitioner points out, section 170(b)(1)(A) could be amended to delete from inclusion therein certain organizations which were included in that section as applicable to the year 1959 and the "as the same may be amended" could be construed as requiring that no substitutions be made for the specifically named organization of any organization that might have been deleted from the list as set forth in section 170(b)(1)(A) as applicable to the year 1959. We do not consider it necessary to decide whether the substitution of an organization which might be included in the list set forth in section 170(b)(1)(A) in years subsequent to 1959 which was not included in the list set forth in the section as applicable to that year would be an "effective" exercise of the power of appointment or whether the words "as the same may be amended" could be construed as petitioner contends.

In *Winthrop* v. *Meisels*, 281 F. 2d 694 (C.A. 2, 1960), the court had under consideration trust for a term of 20 years, the income of which was to go to charitable organizations and the corpus after the 20-year period to be distributed to certain members of the settlor's family, in which the grantor reserved the right to designate the precise charities to receive the income. The question was whether the settlor made a deductible charitable contribution in the year the trust was created or the year the reserved power to designate the specific income recipients was released. The court stated that the "parties assume that the creation of the trust was not a gift *to* a trust operated exclusively for charitable purposes, since only the income was so dedicated" but that the dispute was "as to whether there was a completed gift in 1952 *for the use of*" a charitable organization. However, the reasoning used by the court in concluding that the grantor of the trust made a completed gift in 1952 "for the use of" charities is equally applicable in determining in the instant case whether petitioner made a gift in 1959 of the remainder interests in the Gauld and Mann Trusts "to" an organiza-

tion or organizations listed in section 170(b)(1)(A). In *Winthrop* v. *Meisels, supra,* the court stated, at page 697:

We see no reason why a grantor who irrevocably dedicates the income of a trust to charitable purposes should not be entitled to an immediate deduction. Certainly the Congressional purpose of encouraging such gifts has been achieved, even though the specific beneficiaries have not yet been determined. And where the Congress has desired to require the designation of a beneficiary to make a statutory exception applicable, it has specifically so provided. See I.R.C. 1954, § 673(b).[4]

Using this same reasoning, we see no reason why a grantor who irrevocably grants a remainder interest to a charitable organization of the type covered by section 170(b)(1)(A) should not be entitled to the additional deduction provided by that section.

In our opinion, irrespective of the technical interpretation to be given to the words "as the same may be amended" following the reference to section 170(b)(1)(A), the clear import of the trust instrument is that for an appointment to be effective it must be such as would allow the deduction under the limitations provided by section 170(b)(1)(A). Respondent does not contend that Harvard College and the University of Pennsylvania are not among the organizations listed in section 170(b)(1)(A) as applicable to the year 1959. We need not decide in this case whether any substitution for these organizations which petitioner might appoint by her will would be "effective." If such an appointment is made, its effectiveness must be determined at an appropriate time in an appropriate manner and by a proper agency or court. This question is not now before us.

We hold that petitioner is entitled to include in her contributions coming within the limitations of section 170(b)(1)(A) the value of the remainder interests in the Gauld and Mann Trusts.

*Decision will be entered for petitioner.*

---

[4] SEC. 673(b). EXCEPTION WHERE INCOME IS PAYABLE TO CHARITABLE BENEFICIARIES.— Subsection (a) shall not apply to the extent that the income of a portion of a trust in which the grantor has a reversionary interest is, under the terms of the trust, irrevocably payable for a period of at least 2 years (commencing with the date of the transfer) to a designated beneficiary, which beneficiary is of a type described in section 170(b)(1)(A) (i), (ii), or (iii).