LAWRENCE R. JAMES AND MARY J. JAMES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8217-72.   Filed May 15, 1974.

---

*Deryl F. Hamann* and *Kent O. Littlejohn*, for the petitioners.
*Leonard A. Hammes*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency of $1,-477.05 in petitioners' Federal income tax for 1968. The issue for decision is whether the value of a term interest in an irrevocable trust created by petitioner Lawrence R. James qualifies for the additional allowance of charitable contribution deductions under section 170(b)(1)(A).[1]

All of the facts have been stipulated and are found accordingly.

Petitioners are husband and wife whose legal residence was in Omaha, Nebr., at the time of filing the petition herein. They filed a joint Federal income tax return for 1968 with the Internal Revenue Service Center at Kansas City, Mo.

On December 26, 1968, petitioner Lawrence R. James, as grantor, transferred $25,000 to an irrevocable trust. Petitioner Mary J. James was named as trustee and the Omaha National Bank as successor trustee. The trust instrument provided in part:

ARTICLE I.

TEN ANNUAL CHARITABLE CONTRIBUTIONS

The Trustee shall each year for the next ten (10) years (beginning in 1969 and ending in 1978 inclusive), first from income and then from principal, pay the sum of $1,250.00 to corporations, trusts, community chests, or funds, organized and operated exclusively for religious, charitable, or educational purposes and qualifying for tax exemption under Section 170 of the Internal Revenue Code, and of the character described in Section 170(b)(1)(A) thereof. The Trustee, or her successor, shall select the particular recipient or recipients of all or any portion of said sum.

From and after January 1, 1979, the trust was to continue for the benefit of the grantor's two children with discretionary distributions of income and principal until they each attained the age of 21, at which time the trust was to terminate and such child's share of the trust property was to be paid over to him or her. If either child died before 21, his or her share was to be added to the trust for the other child; if both children died before attaining such age, the trust property was to be paid over to the grantor's wife (petitioner Mary J.

---

[1] Statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. Sec. 170 was amended by the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, effective for taxable years subsequent to the one involved herein.

James) or her estate either on the date of death or January 1, 1979, whichever date first occurred.

Pursuant to Article I of the agreement, the trustee has, beginning in 1969 and continuing through 1972, paid, first from the income and then, if necessary, from the principal of the trust,[2] the sum of $1,250 per year to the Dundee Presbyterian Church, an organization of the character described in section 170(b)(1)(A).

On their Federal income tax return for 1968, petitioners claimed a deduction for, among other charitable contributions, the amount of $10,395.75 as the value of the interest in the trust created on December 26, 1968. This amount was mathematically computed in conformity with the 3½-percent annuity table appearing at section 20.2031–7 (Table II), Estate Tax Regs., by determining the present value as of December 26, 1968, of 10 equal payments of $1,250 each to be made over a period of 10 years.

Section 170(a) allows a deduction for any charitable contribution payment of which is made within the taxable year. Section 170(c) defines a charitable contribution as "a contribution or gift *to* or *for the use of*" a class of described organizations. (Emphasis supplied.) Section 170(b)(1)(B) generally limited individual taxpayers to a charitable contribution deduction not to exceed 20 percent of adjusted gross income. Section 170(b)(1)(A), however, allowed an additional charitable contribution deduction not to exceed another 10 percent of adjusted gross income for "any charitable contribution *to*" a more limited class of described organizations. (Emphasis supplied.)

Respondent contends that this case is controlled by *John I. Appleby*, 48 T.C. 330 (1967). The taxpayer there had created a perpetual trust which qualified as a foundation exempt from Federal income tax under section 501(c)(3). The sole beneficiary of the foundation was an organization of the character described in section 170(b)(1)(A); the net income of the foundation, if any, was to be distributed annually to the beneficiary organization. During the taxable years, the taxpayer made contributions to the foundation, which he claimed as amounts qualifying for the additional 10-percent allowance of section 170(b)(1)(A). We held that such contributions to the foundation were made only "for the use of" the beneficiary organization and therefore failed to qualify under section 170(b)(1)(A).

Petitioners acknowledge the correctness of our holding in *Appleby* but contend that the income interest involved therein is distinguishable in material respects from the interest here. They contend that

---

[2] The record does not disclose whether it was in fact necessary to make any of such payments from the principal rather than the income of the trust.

*Alice Tully*, 48 T.C. 235 (1967), applies. There, the taxpayer created and funded two trusts providing for the income to be paid to specifically named individuals for their lives and, should they predecease the taxpayer, for her life, and, upon the death of the survivor, that the trustee should pay the principal to charities of the character described in section 170(b)(1)(A). We held that the remainder interests in the trusts constituted a gift *to* the class of charities described in section 170(b)(1)(A).

Petitioners place their greatest reliance on the fact that the annuity interest here is more certain of valuation than either the remainder interests in *Tully* or the income interest in *Appleby*. In the former, the value of the remainder interests was necessarily dependent upon the life expectancies of the life beneficiaries, and in the latter the realization of the income interest was dependent upon the extent to which income was generated. Here, petitioners stress, the eligible charities were entitled to receive a predetermined amount over a fixed period of time, regardless of the sufficiency of the trust's income or other contingency.

In our opinion, the difficulties or differences which inhere in the valuation of different types of property interests are irrelevant to the issue before us. The critical element is the nature of the right itself. In *Tully*, we treated the remainder interest as a right in the principal of the trust itself. By way of contrast, in the instant case, the right in the trust principal arises only if the income of the trust is insufficient to cover the fixed annual payment.[3] Under these circumstances, it can be said that the possibility of the charity's receiving principal was "so remote as to be negligible." See sec. 1.170–1(e), Income Tax Regs. Cf. *James L. Darling*, 43 T.C. 520 (1965). Compare also *Commissioner* v. *Sternberger's Estate*, 348 U.S. 187 (1955).

In view of the foregoing, we conclude that *Tully* is inapplicable herein and that the additional deduction should not be allowed. To hold otherwise would enable taxpayers completely to avoid the impact of *Appleby* by the simple device of coupling a direction annually to distribute income of a trust to a charity described in section 170 (b)(1)(A) with a further direction that the annual payment be not less than a fixed amount which would approximate—indeed, even be somewhat less than—the anticipated amount of such income, thereby subverting the legislative intention in enacting that section.

*Decision will be entered for the respondent.*

---

[3] We note that if the $25,000 had been invested in securities producing a 5-percent return (see fn. 2 *supra*), there would have been no need to invade principal to provide for the $1,250 annual payment.