DAVID ROCKEFELLER AND MARGARET McG. ROCKEFELLER, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF JOHN D. ROCKEFELLER 3RD, DECEASED, JOHN D. ROCKEFELLER IV, J. RICHARDSON DILWORTH, AND DONAL C. O'BRIEN, JR., EXECUTORS, AND BLANCHETTE H. ROCKEFELLER, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9356–77, 9357–77.    Filed January 29, 1981.

*Howard A. Bolton, William E. Jackson, Stuart E. Keebler,* and *Joseph Persinger,* for the petitioners.
*Michael K. Phalin* and *Alan B. Horn,* for the respondent.

### OPINION

DRENNEN, *Judge*: Respondent determined deficiencies in income tax of the petitioners as follows:

| Docket No. | Year | Deficiency |
| --- | --- | --- |
| 9356–77 | 1970 | $34,266 |
|  | 1971 | 57,295 |
| 9357–77 | 1969 | 130,081 |
|  | 1970 | 125,216 |
|  | 1971 | 234,403 |

The cases were consolidated for briefing and opinion. The only issue for decision is whether unreimbursed expenses incurred by the taxpayers in rendering services to qualifying charities, which are conceded by respondent to qualify as charitable contributions, qualify for the so-called unlimited charitable contribution deduction allowed under sections 170(b)(1)(C) and 170(g), I.R.C. 1954,[1] as amended and in effect for the years here involved.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years involved, unless otherwise indicated.

The cases were submitted on facts that were fully stipulated. The stipulations of fact filed by the parties are incorporated herein by reference. The pertinent facts are as follows.

David Rockefeller and Margaret McG. Rockefeller, the petitioners in docket No. 9356–77, are individuals, husband and wife, and at all times pertinent hereto, including the time of filing their petition in this case, their legal residence has been the town of Mount Pleasant, Westchester County, N.Y.

The petitioners in docket No. 9357–77 are the duly appointed executors of the Will of John D. Rockefeller III and Blanchette H. Rockefeller, the widow of John D. Rockefeller III. At all times pertinent hereto, including the time of filing their petition in this case, John D. Rockefeller III and Blanchette H. Rockefeller were husband and wife, and their legal residence was in the town of Mount Pleasant, Westchester County, N.Y.

David and Margaret McG. Rockefeller filed joint income tax returns for the calendar years 1970 and 1971 with the District Director of Internal Revenue for the District of Manhattan, N.Y. In a statutory notice dated June 9, 1977, respondent determined deficiencies in their income tax for the calendar years 1970 and 1971 in the sums of $34,266 and $57,295, respectively. The sole adjustment contained in this statutory notice was a determination by respondent that claimed unreimbursed expenses for the respective years did not qualify under sections 170(b)(1)(A), 170(b)(1)(C), and 170(g)(2)(A), I.R.C. 1954. The correctness of that adjustment is the only issue in docket No. 9356–77.

In docket No. 9356–77, the amounts initially determined by respondent not to qualify for the unlimited charitable contributions deduction, the amounts which respondent has conceded did qualify, and the amounts remaining in issue, are as follows:

| Year | Amounts disallowed | Amounts conceded by respondent | Amounts in issue |
|------|--------------------|--------------------------------|------------------|
| 1970 | $77,981 | $2,345 | $75,636 |
| 1971 | 81,850 | 2,235 | 79,615 |

John D. III and Blanchette H. Rockefeller filed joint income tax returns for the calendar years 1969, 1970, and 1971 with the District Director of Internal Revenue for the District of Manhattan, N.Y. In a statutory notice dated June 9, 1977,

respondent determined deficiencies in their income tax for the calendar years 1969, 1970, and 1971 in the sums of $130,081, $125,216, and $234,403, respectively. The sole adjustment contained in this statutory notice was a determination by respondent that claimed unreimbursed expenses for the respective years did not qualify under sections 170(b)(1)(A), 170(b)(1)(C), and 170(g)(2)(A). The correctness of that adjustment is the only issue in docket No. 9357–77.

In docket No. 9357–77, the amounts initially determined by respondent not to qualify for the unlimited charitable contributions deduction, the amounts which respondent has conceded did qualify, the amounts which petitioners have conceded, and the amounts remaining in issue, are as follows:

| Year | Amounts disallowed | Amounts conceded by respondent | Amounts conceded by petitioners | Amounts in issue |
|------|--------------------|--------------------------------|---------------------------------|------------------|
| 1969 | $168,937 | $16,169 | 0 | $152,768 |
| 1970 | 239,701 | 4,464 | $127 | 235,110 |
| 1971 | 334,861 | 14,047 | 69 | 320,745 |

During 1969, John D. Rockefeller III, and during 1970 and 1971, John D., III, and David Rockefeller, and other family members shared in the expenses of operating a pooled service center at the Rockefeller Family Joint Office located at 30 Rockefeller Plaza in New York City. The Rockefeller Family Joint Office provided to family members legal, accounting, clerical, and technical services, as well as investment services, with a staff of approximately 215 persons. Both John D., III, and David Rockefeller also maintained personal offices and staffs at the same location in contiguous premises. At such location, John D., III, and David Rockefeller, themselves, and through their personal staffs and the staff of the Rockefeller Family Joint Office, conducted their business, financial, philanthropic, and personal affairs. Their philanthropic activities included providing services to various charitable organizations. They deducted as charitable contributions the unreimbursed expenses incurred in providing these services. These unreimbursed expenses consisted of salaries of personal and/or joint office employees, and of travel, entertainment, and other miscellaneous expenses incurred either by John D., III, or David Rockefeller, themselves, or by their personal or joint office employees.

During 1970, David Rockefeller, and during 1971, David and

Margaret McG. Rockefeller, incurred and paid unreimbursed expenses in the aggregate amounts of $75,636 and $79,615, respectively, in connection with or directly attributable to services rendered by David Rockefeller, his salaried staff personnel, or others, or by Margaret McG. Rockefeller in 1971, to organizations described in section 170(b)(1)(A) or 170(g)(2)(C), as in effect for those years. It has been stipulated that all such expenses for these years were charitable contributions.

The amounts referred to above consisted of the following categories of expenses, all incurred in the course of the rendition of voluntary services to charitable organizations:

|     |                                                                                                      | 1970 | 1971 |
| --- | ---------------------------------------------------------------------------------------------------- | ---- | ---- |
| (a) | A portion of staff payroll and related expenses of David Rockefeller's office                        | $32,092 | $23,486 |
| (b) | A portion of staff payroll and related expenses of David Rockefeller's share of joint family office expenses | 39,376 | 53,838 |
| (c) | Other expenses of petitioners, David Rockefeller's staff employees, or others rendering services to the respective charities | 4,168 | 2,291 |
|     | Total                                                                                                | 75,636 | 79,615 |

In each of the years 1970 and 1971, David and Margaret McG. Rockefeller satisfied the conditions required to qualify for the unlimited charitable contributions deduction provided by section 170(b)(1)(C), and made a proper election to claim that deduction on their joint income tax return for each year.

During 1969, 1970, and 1971, John D. Rockefeller III incurred and paid unreimbursed expenses in the aggregate amounts of $152,768, $235,110, and $320,745, respectively, in connection with or directly attributable to services rendered by him, his salaried staff personnel, or others to organizations described in section 170(b)(1)(A), 170(g)(2)(B),[2] or 170(g)(2)(C), as in effect for the particular year. It has been stipulated that all such expenses for these years were charitable contributions.

The amounts referred to above consisted of the following

---

[2] Sec. 170(g)(2)(B) was repealed by the Tax Reform Act of 1969, Pub. L. 91–172, sec. 201(a)(2)(A), 83 Stat. 558.

categories of expenses, all incurred in the course of the rendition of voluntary services to charitable organizations:

|  |  | 1969 | 1970 | 1971 |
|---|---|---|---|---|
| (a) | A portion of staff payroll and related expenses of John D. Rockefeller 3d's office | $125,000 | $185,176 | $226,274 |
| (b) | A portion of staff payroll and related expenses of John D. Rockefeller 3d's share of joint family office expenses | 11,980 | 16,429 | 15,692 |
| (c) | Other expenses of John D. Rockefeller 3d, his staff employees, or others rendering services to the respective charities | 14,988 | 33,505 | 78,779 |
|  | Total | 151,968 | 235,110 | 320,745 |

In each of the years 1969, 1970, and 1971, John D., III, and Blanchette H. Rockefeller satisfied the conditions required to qualify for the unlimited charitable contributions deduction provided by section 170(b)(1)(C), and made a proper election to claim that deduction on their joint income tax return for each year.

During the years here involved, deductions for "any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year," were allowed under section 170(a) of the 1954 Code. "Charitable contributions" were defined in section 170(c) as meaning "a contribution or gift *to or for the use of*" (emphasis added) certain classes of recipients, which included governmental bodies and corporations, trusts, and community chests created in the United States and organized and operated exclusively for religious, charitable, educational purposes, etc. In the case of individuals, the deductions were limited in section 170(b)(1) as provided in subparagraphs (A), (B), (C), and (D). Subparagraph (A) provided a special rule that "any charitable contribution to" certain specified types of organizations, such as churches, educational organizations, hospitals, and other publicly supported organizations, shall be allowed to the extent that the aggregate of such contributions does not exceed 10 percent of the taxpayer's adjusted gross income. Subparagraph (B) provided a general limitation that the total deduction for any taxable year shall not exceed 20 percent of the taxpayer's adjusted gross income. The 10 percent provided in

subparagraph (A) was in addition to the 20 percent provided in subparagraph (B). Subparagraph (C) provided an unlimited deduction for certain individuals meeting specified conditions.[3] However, section 170(g) restricted the availability of the unlimited charitable deduction to, for our purposes, "any charitable contribution described in subsection (b)(1)(A)." Thus, the unlimited charitable contribution deduction applied only to contributions *to* the organizations listed in section 170(b)(1)(A).

The parties have stipulated that the unreimbursed expenses here involved were charitable contributions as defined in section 170(c) and that all the conditions for the unlimited deduction under section 170(b)(1)(C) were met. The issue before us is thus a narrow one, being whether the unreimbursed expenses, which admittedly qualified as charitable contributions, fall within the expanse of section 170(b)(1)(C) as restricted by section 170(g) to contributions described in section 170(b)(1)(A), i.e., contributions *to* specified organizations.[4] Respondent contends that those expenses *were* incurred in rendering services "for the use of" but not "*to* " the charitable organizations, so they do not qualify for the unlimited deduction. Petitioners claim that the unreimbursed expenses were contributions "*to*" the charitable organizations rather than "for the use of" those organizations.

Unreimbursed expenses made incident to the rendition of services to charitable organizations have long been recognized as charitable contributions. *Upham v. Commissioner*, 16 B.T.A. 950 (1929); *Wolfe v. McCaughn*, 5 F. Supp. 407 (E.D. Pa. 1933); sec.

---

[3]Sec. 170(b) was amended by sec. 201(a) of the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 549, 1969–3 C.B. 10, 45, effective for taxable years beginning after Dec. 31, 1969. The amendments were the first step in phasing out the unlimited charitable contribution deduction, which was ultimately repealed in 1976, and increasing the general limitation provided in (b)(1)(A) to 50 percent of the taxpayer's contribution base (adjusted gross income). The provisions in the amendments are complex, and since they do not appear to affect the narrow issue here involved, we will not discuss them herein but will discuss the issue as though the law in effect for 1969 applied to all of the years here involved. The same will be true with respect to the regulations. It is interesting to note, however, that in the introduction to the problem of charitable contributions contained in H. Rept. 91–413 p. 51 (1969), 1969–3 C.B. 233, it is stated that under present law, charitable contribution deductions allowed individuals, generally are limited to 30 percent, but in the case of gifts to certain private foundations, the deduction is limited to 20 percent. This supports petitioners' argument that par. (b)(1)(A) was the general limitation and that the phrase "for the use of" was intended to mean "in trust for." See also S. Rept. 830, 88th Cong., 2d Sess. 59–60 (1964), on sec. 209(b) of the Revenue Act of 1964, Pub. L. 88–272, 78 Stat. 19 (1964), relating to the unlimited charitable contribution deduction.

[4]There is no argument that the expenses were not incurred in rendering services to or for the use of the organizations specified in sec. 170(b)(1)(A).

1.170–2(a)(2), Income Tax Regs. (1969). But we have found no case in which a court, when specifically confronted with the issue, has determined whether unreimbursed expenses were contributions *"to "* a charity[5] or *"for the use of "* a charity. There have been cases such as *Orr v. United States*, 343 F.2d 553 (5th Cir. 1965); *Archbold v. United States*, 195 Ct. Cl. 278, 444 F.2d 1120 (1971); and *Miller v. Commissioner*, T.C. Memo. 1975–279, involving unreimbursed expenses incurred in providing property or services for charities, in which the distinction has been recognized but in each of those cases, the issue was simply whether the expenses qualified as charitable contributions under section 170(c) and could have been decided on the basis that the expenses were contributions either *to* or *for the use of* a charity. Neither the unlimited charitable deduction provided in section 170(b)(1)(C) nor the additional 10-percent deduction provided in section 170(b)(1)(A) were under consideration.

There have also been other cases in which the distinction between *to* and *for the use of* has been involved, such as *James v. Commissioner*, 62 T.C. 209 (1974); *Tully v. Commissioner*, 48 T.C. 235 (1967); and *Appleby v. Commissioner*, 48 T.C. 330 (1967); but none of those cases were concerned with unreimbursed expenses, and the issues were whether contributions to trusts of which charities were the ultimate beneficiaries were contributions to or for the use of charities.

Unfortunately, none of the above cases solves the issue we have here, which is whether the unreimbursed expenses were contributions *to* the charities or *for the use of* the charities. Petitioners claim that the legislative and judicial histories of the phrase *"for the use of"* prove that the phrase, as used in this context, means "in trust for," and since respondent recognizes that these expenses qualify as charitable contributions, and it is clear that they were not "in trust for" the charities, they must be *to* the charities. Petitioners also claim that the unreimbursed expenses were by their nature immediately and directly available to the publicly supported charities mentioned in subsection (b)(1)(A) and thereby comply with the purpose of Congress in limiting the deduction provided in (b)(1)(A) and in (C) to contributions *to* the charities. Respondent, on the other hand,

---

[5]For the sake of convenience, we will at times use the words "charity" or "charities" to refer to the organizations named in sec. 170(b)(1)(A) and sec. 170(c).

argues that Congress, when it enacted section 170(b)(1)(A) in 1954, and section 170(g) in 1964, specifically intended to limit the additional 10-percent deduction and the unlimited deduction to contributions made directly to a qualified charity, and at the same time, to expand the meaning of the words "for the use of" used in section 170(c) to include other contributions which were for the benefit or use of the charities but were not made directly to the charities, such as unreimbursed expenses.

A brief review of the legislative and judicial histories of the charitable contribution provisions in the law may be of some help in deciding the dispute.

Section 214(a)(11) of the Revenue Act of 1918, ch. 18, 40 Stat. 1068, provided income tax deductions only for contributions or gifts made within the taxable year *to* charitable corporations. The Bureau of Internal Revenue, in O.D. 669, 3 C.B. 187 (1920), took the position that deductions for contributions to community chests, funds, and trusts were not allowable for income tax purposes because such organizations were not organized and operated for charitable purposes, and although the contributions they received might be held in trust for charities, existing law did not allow a deduction for charitable contributions to a trust. At the urging of various individuals interested in charitable organizations, the provision was amended by section 214(a)(11) of the Revenue Act of 1921, ch. 136, 42 Stat. 241, to provide that contributions *to or for the use of* corporations, community chests, funds, or foundations organized and operated exclusively for charitable, etc., purposes were deductible. It appears from the hearings before the Senate Finance Committee (see Hearings Before the Senate Comm. on Finance, 67 Cong., 1st Sess. 289–298 (May 9, 1921)), that the purpose of the amendment was to make gifts in trust for the benefit of charities eligible for the charitable contribution deduction. This is supported by various rulings of the Bureau of Internal Revenue in which it was stated that the words "for the use of" were intended to convey a meaning similar to "in trust for." See S.M. 2766, III–2 C.B. 153 (1924); I.T. 3707, 1945 C.B. 114; Rev. Rul. 194, 1953–2 C.B. 128. And in *Danz v. Commissioner*, 18 T.C. 454 (1952), affd. 231 F.2d 673 (9th Cir. 1955), cert. denied 352 U.S. 828 (1956), where charitable contributions in trust for charitable beneficiaries were held deductible, this Court said:

Those contributions are not deductible on the ground that they were made to the trust, a fund organized and operated exclusively for charitable purposes.

However, contributions are deductible if they are made "for the use of" a corporation of the kind described in section 23(o)(2) [the 1939 Code predecessor of sec. 170 of the 1954 Code]. It has been held, properly, that the words "for the use of" used in section 23(o) are intended to convey a meaning similar to that of "in trust for" so that a contribution irrevocably in trust for organizations described in section 23(o)(2) is sufficient. *H. H. Bowman*, 16 B.T.A. 1157; I.T. 3707, 1945 C.B. 114. [*Danz v. Commissioner, supra* at 464.]

In *Bowman v. Commissioner*, 16 B.T.A. 1157 (1929), it was held that gifts in trust for the benefit of charities were not deductible under the Revenue Act of 1918 but were deductible under the Revenue Act of 1921.

It thus seems fairly clear that the original purpose for adding the words "for the use of" to the definition of charitable contributions was principally to allow deductions for contributions made "in trust for" charitable organizations.

The earlier law limited the deduction for charitable contributions to 15 percent of the taxpayer's net income. Sec. 214(a)(11), Revenue Act of 1921, ch. 136, 42 Stat. 227. This was subsequently increased to 20 percent. Act of July 8, 1952, ch. 588, sec. 4(a), 66 Stat. 443, amending sec. 23(o), I.R.C. 1939. The provisions of the law remained much the same until the adoption of the 1954 Code. Section 170 of the new Code supplanted section 23(o) of the 1939 Code in providing deductions for charitable contributions. As earlier noted, section 170(a) allowed as a deduction any charitable contribution (as defined in subsec. (c)) payment of which is made within the taxable year. Subsection (b) established limitations on the deduction for individuals, subparagraph (B) retaining the general limitation of 20 percent of adjusted gross income. Subparagraph (C) also retained the unlimited deduction formerly provided in section 120 of the 1939 Code. But subparagraph (A) added a provision which had no counterpart in the 1939 Code. It allowed an additional deduction of 10 percent for "any charitable contribution to" certain specified publicly supported charitable organizations. There can be no doubt that the limitation used the word "to" instead of "to or for the use of," which was retained in the definition of charitable contributions in section 170(c), deliberately. In both the House Ways and Means Committee report to accompany H.R. 8300, H. Rept. 1337, 83d Cong., 2d Sess. 25, and the Senate Finance Committee report on the bill, S. Rept. 1622, 83d Cong., 2d Sess. 29, it was noted that the additional 10-percent deduction was applicable only to

contributions paid *to* the charitable corporation and not *for the use of* the organization. "Accordingly, payments to a trust (where the beneficiary is an organization described in said clauses (i), (ii), and (iii)) are not included under this special rule." H. Rept. 1337, *supra* at A53; S. Rept. 1622, *supra* at 207. The regulations accompanying the 1954 revision also stated that the 10-percent additional deduction was available only for contributions "to, but not merely for the use of" the specified organizations. Sec. 1.170–2(b), Income Tax Regs.; T.D. 6285, 1958–1 C.B. 127.

We get the impression from the discussion in the congressional reports that the committees were more concerned that the charitable organizations themselves should be the direct recipients of the contributions than with the form in which the contributions were made. In other words, we are not convinced, as respondent claims, that Congress intended that only gifts of money or property directly to the designated charities would qualify for the additional deduction, to the exclusion of contributions made directly to the charities in some other recognized form, such as unreimbursed expenses.

The unlimited charitable contribution deduction provided in subsection (b)(1)(C) remained unrestricted, provided the conditions were met, until 1964, when Congress added section 170(g) (sec. 209(b), Revenue Act of 1964, Pub. L. 88–272, 78 Stat. 19), which restricted the qualifying contributions to only those described in section 170(b)(1)(A). The report of the Senate Finance Committee, S. Rept. 830, 88th Cong., 2d Sess. 59, explained this provision:

> Under present law, the 30-percent limitation with respect to charitable contribution deductions in the case of individuals does not apply if the taxpayer in the taxable year in question and in 8 out of 10 of the preceding taxable years made a charitable contribution which taken together with his income taxes with respect to each of those years equalled 90 percent or more of his taxable income for the year in question. Under present law, there is no distinction between charitable contributions in the 20-percent category and those in the 30-percent category for purposes of this unlimited deduction. Thus, the charitable contributions taken into account both in the taxable year and in the 8 prior qualifying years can be either those to public type charities or those to private foundations.
>
> Your committee has added a provision to the bill making the unlimited charitable contribution deduction available only with respect to contributions to publicly supported organizations * * * Your committee believes that the special advantage of the unlimited charitable contribution deduction should

not be made available in the case of these private foundations because frequently contributions to foundations do not find their way into operating philanthropic endeavors for extended periods of time. * * *

It thus appears that the principal purpose of the limitation on the unlimited charitable contribution deduction was to make only those contributions which became immediately available to publicly supported charities qualify for the deduction and to exclude those made to private foundations which often held the contributions "in trust for" the charities.

As noted in note 3 *supra*, the law was amended again in 1969 to phase out the unlimited charitable contribution deduction entirely and to increase the general limitation to 50 percent of a taxpayer's contribution base (adjusted gross income) but we do not believe a discussion of those rather complex provisions would add much light to the narrow issue we have before us.[6]

Nowhere in the legislative history of the charitable contribution provisions, and nowhere in respondent's regulations, is it suggested that unreimbursed expenses would qualify only as contributions *for the use of* charities rather than as contributions *to* charities.

As previously mentioned, unreimbursed expenses incurred in rendering services to or for charities have qualified as charitable contributions for a number of years. In *Upham v. Commissioner*, *supra*, the Board of Tax Appeals held that unreimbursed expenses of a physician attending meetings of a medical society constituted contributions *to* the medical society and were deductible under section 214(a)(11) of the Revenue Act of 1921. While the opinion used the word "*to*," the statute had been amended to include "*or for the use of*," but it is uncertain whether the distinction made any difference or was considered.

In *Wolfe v. McCaughn*, *supra*, the District Court, relying on *Upham*, concluded that unreimbursed expenses of the taxpayer in rendering services to the YMCA in Europe were deductible as charitable contributions under section 214(a)(11) of the Revenue Act of 1918, which allowed deductions for contributions *to* charitable organizations. The words "for the use of" had not yet been added to the law.

The above two cases apparently set the precedent for recog-

---

[6]Sec. 170(b)(1)(C) was repealed in 1976, Pub. L. 94–455, sec. 1901(a)(28), 90 Stat. 1768.

nizing unreimbursed expenses for charities as deductible charitable contributions. Both opinions characterized the expenses as contributions *to* charities. Taken together with the *Bowman* case, they also support petitioners' contention that the words "for the use of," added in 1921, meant "in trust for."

In *Orr v. United States, supra*, the issue was the deductibility, as charitable contributions, of various expenses incurred in the use of an automobile in rendering services to a church, such as gas and oil, depreciation, insurance premiums, and repairs. The Commissioner allowed a deduction for gas and oil but disallowed a deduction for repairs, which the court sustained. The court also disallowed a deduction for depreciation because it did not constitute a *payment* to a charity. Also disallowed were insurance premiums. Referring to the definition of charitable contributions in section 170(c), the court said that "the insurance payment was, of course, not a 'contribution *to* ' [emphasis in original] a charity; the question, therefore, is whether it was a gift *'for the use of* ' [emphasis supplied] a charitable organization." *Orr v. United States, supra* at 557. The court concluded that since the insurance would have been paid anyway and services to the charity did not cause payment of the insurance, it did not qualify as a gift for the use of the charity. The language in the opinion certainly lends support to respondent's argument that the only contributions that qualify as contributions *to* a charity are direct payments to the charity. Unfortunately, the court did not explain its rather didactic statement that an insurance payment was not a contribution *to* a charity. However, the statement would appear to be dictum because neither section 170(b)(1)(A) nor (C) was involved, and the expenses could have been deductible had the court found them to be either to or for the use of the charity.

Respondent also relies on *Archbold v. United States, supra*, wherein the issue was whether legal fees paid by the donor of a tract of land to the United States for park purposes to prevent construction of a highway through the property were deductible as charitable contributions. The court said that "the real question * * * , in terms of the statute, is whether in this case there has been a contribution or gift 'for the use of' the United States." *Archbold v. United States, supra* at 1122. The court added a footnote that petitioner did not claim that there was a contribution *to* the United States. While the court stated the

issue as above, there was no issue as to whether there was a contribution *to*, as contrasted with *for the use of*, the United States. The only issue was whether the expenses were charitable contributions, defined as "to or for the use of" designated organizations. In this case, the Government argued that "for the use of" meant "in trust for" and that the test was whether the donee had control of the contribution. In allowing a deduction for the legal fees, the Court said the Government's position was belied by its own regulations which provided that unreimbursed expenses incident to rendition of services to charitable organizations may constitute deductible expenses. Sec. 1.170–2(a)(2), Income Tax Regs. (1969).

The only thing that is clear from the above discussion is that there is no certain answer to the issue presented in this case. It could be that Congress intended, by enacting section 170(b)(1)(A) and (g), to restrict contributions qualifying for the 30-percent limitation and the unlimited deduction to payments made directly to charitable organizations, and that any other type of contribution would qualify only for the 20-percent limitation. However, it did not say so; instead, it indicated it was primarily concerned with making the first two limitations mentioned above inapplicable to contributions that were made in trust for charitable organizations as a result of which the organizations might not receive the full benefit of the contributions immediately.

On the other hand, unreimbursed expenses incurred in rendering services directly to charitable organizations which received the full benefit of the services immediately, have long been recognized as qualifying for the charitable deduction, and we find no violation of congressional intent in classifying the expenses here involved as contributions *to* charities within the meaning of section 170(b)(1)(A). As we understand the facts, the payments were made for services that were rendered directly to charities which were the immediate beneficiaries of the services.[7] Had the petitioners made the payments directly to the charities and had the charities paid for the services, there would seem to be little question that the payments would qualify for

---

[7] We assume that the expenses were not otherwise claimed as deductions for tax purposes.

the unlimited deduction. We see no reason why this arrangement should be treated differently.

Keeping in mind that "Tax provisions as to charities are begotten from motives of public policy and are not to be narrowly construed" (*Estate of Whitehead v. Commissioner*, 3 T.C. 40, 48 (1944), affd. sub nom. *Commissioner v. Citizens & So. Nat. Bank*, 147 F.2d 977 (5th Cir. 1945); *Estate of Carroll v. Commissioner*, 38 T.C. 868 (1962)), we believe the better interpretation of the statute is to allow the unreimbursed expenses here involved as charitable contributions for purposes of the unlimited charitable contribution deduction under section 170(b)(1)(C), prior to its repeal, absent more definitive action of Congress to disallow the deduction.

We so conclude and hold for petitioners on this issue.

*Decisions will be entered under Rule 155.*